In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1504

Charles Johnson,

Plaintiff-Appellant,

v.

Allsteel, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3156--Ruben Castillo, Judge.

Argued December 6, 2000--Decided August 7, 2001


  Before Bauer, Posner, and Williams, Circuit
Judges.

  Williams, Circuit Judge.  Charles Johnson
brought this suit against his former
employer and former plan administrator,
Allsteel, Inc., and several related
entities (collectively "Allsteel") under
sec.sec. 404(a) and 502(a) of the
Employee Retirement Income Security Act
("ERISA") challenging what he claims is
an illegal plan amendment. The district
court dismissed the case sua sponte for
lack of standing because it was not
convinced that Johnson had sufficiently
alleged injury-in-fact. Taking all of his
factual allegations as true, we are
satisfied that Johnson has alleged
sufficient facts to establish Article III
standing and, therefore, reverse the
judgment of the district court and remand
the case for further proceedings.

I.  BACKGROUND

  Johnson was employed by Allsteel, a
manufacturer and distributor of office
furniture. While there, he became a
participant in Allsteel's pension plan
("the Plan"). The specific sections of
the Plan amended by Allsteel (discussed
below) are part of pension agreements
that his union, the International
Brotherhood of Boilermakers, Iron Ship
Builders, Blacksmiths, Forgers & Helpers,
Local 1239 ("the Union"), bargained for

on his and his fellow union members' behalf.

As originally drafted, section 11.1 of the Plan provided that the Plan could be amended only "by agreement of the parties." Without obtaining the agreement of any other party to the Plan, Allsteel changed the language of section 11.1 to state that the Plan could be amended only "by the Company," thereby granting itself the right to unilaterally amend the Plan. Allsteel then used this purported right to grant itself discretion to resolve all questions arising under the Plan and relating to the Plan's administration:

The Company [(Allsteel)] will be responsible for the general administration of the Plan and as Plan Administrator will be responsible for the carrying out of its provisions. From time to time, the Company may adopt such rules and regulations as may be necessary for proper and efficient administration of the Plan. However, the Company's administration of the Plan and the rules and regulations adopted by it shall be consistent with the terms of the Plan and any applicable pension agreement arrived at through collective bargaining. The Company shall have discretionary authority to interpret and construe this Plan and to determine all questionsarising under this Plan, including questions regarding eligibility, vesting and entitlement to benefits under the Plan.

Amended Section 1.3 (emphasis added).

Johnson alleges that he was injured by this second amendment, which grants Allsteel an additional quantum of discretion not bargained for by the parties. To remedy this alleged injury, Johnson seeks (i) a declaration that the allegedly proscriptive amendment violates the terms of the Plan, (ii) reformation of the Plan to eliminate the amended language, (iii) clarification of his rights to future benefits under the Plan, and (iv) other equitable relief.

II. ANALYSIS

We review the district court's dismissal for lack of standing de novo. Norfolk S. Ry. Co. v. Guthrie, 233 F.3d 532, 534 (7th Cir. 2000). We commend the district

court for addressing the question of standing sua sponte. However, we disagree with its conclusion that Johnson failed to allege injury-in-fact.

To satisfy Article III's standing requirements, a plaintiff must allege that he has sustained "personal injury[-in-fact] fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). Johnson alleges that the sections of the Plan changed by Allsteel were specifically intended "to limit the ability of [Allsteel] substantively and procedurally to administer and to amend the Plan." In other words, the Union bargained, on his behalf, for a defined bundle of contract rights, including the right to have the Plan administered with a limited amount of discretion. In his view, when Allsteel increased its discretion as plan administrator, it simultaneously decreased the value of his bargained-for-entitlements, causing him injury-in-fact. Allsteel disagrees, arguing that Johnson cannot show injury-in-fact because it has yet to adversely exercise its discretion towards him.

We agree with Johnson that he was injured by Allsteel's increase in discretion. We have stated before that the right to have a plan administered with a limited amount of discretion is an important right for plan participants:

An employee's decision with regard to the purchase of medical insurance and the provision of resources for retirement will often depend critically on his understanding of his rights under his employer's ERISA plan. The very existence of 'rights' under such plans depends on the degree of discretion lodged in the administrator. The broader that discretion, the less solid an entitlement the employee has and the more important it may be to him, therefore, to supplement his ERISA plan with other forms of insurance.

Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000) (emphasis added). An increased amount of discretion opens up to the administrator administering the plan a greater range of permissible choices. This expanded range

renders "less solid" the participant's benefits by shifting risk to the participant. The increased risk the participant faces as a result is an injury-in-fact. 13 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure sec. 3531.4, at 696 (2001 Supp.) (citing Clinton v. New York, 524 U.S. 417 (1998)).

For example, an amendment that changes a plan's terms so that oral surgery, which previously was always covered, is covered at the administrator's discretion obviously makes it less certain that the insured will be covered in the event that he must undergo such a procedure. The chance that the administrator will, at some point, exercise its discretion adversely against the insured immediately decreases the insured's rights under the plan. This is true whether or not the administrator ever exercises its discretion adversely against the insured; the increased risk is itself an injury. See id. The insured would have to purchase additional insurance in order to regain the protection the plan originally provided.

To see why Allsteel's alteration of the Plan's language makes less certain Johnson's rights, we must understand the plan administrator's decision-making process. A plan administrator is responsible for the general administration of the plan, a contract between the employee and the employer for benefits. See Contents of Summary Plan Description, 29 C.F.R. sec. 2520.102-3 (2001); Herzberger, 205 F.3d at 330. When presented with a claim for benefits, for example, the administrator must evaluate the claim and determine whether the participant-applicant meets the conditions set forth in the plan. If there is more than one reasonable interpretation of the plan's terms, the administrator must choose from among those choices. See Questions and Answers Relating to Fiduciary Responsibility under the Employee Retirement Income Security Act of 1974, 29 C.F.R. sec. 2509.75-8 (2001); Trombetta v. Cragin Fed. Bank for Savings Emp. Stock Own. Plan, 102 F.3d 1435, 1438 (7th Cir. 1996) (internal citation omitted). After weighing the various options, the administrator must notify the applicant

of its decision to either grant or deny benefits. If displeased with the administrator's decision, the applicant usually has the option of appealing it internally. See 29 C.F.R. sec. 2520.102-3(s). If that appeal is unsuccessful, then the applicant may file suit under ERISA challenging the administrator's decision. Id.

When presented with a benefits claim, the administrator is aware of the risk that his decision may be subject to judicial review. The administrator has an incentive to avoid intense scrutiny by the courts (such processes can be costly and time-consuming) and is, therefore, more likely to choose an interpretation that will be favored by the reviewing court, an independent and unbiased forum more likely to explain fully its reasons and thereby scrutinize effectively the soundness of its own decision./1 See 29 U.S.C. sec. 1001(b) (2001) ("[ERISA's policy is] to protect . . . the interests of participants in employee benefit plans . . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts."); Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir. 1992) (characterizing judicial review of an administrator's decision as an "additional benefit"); cf. Zervos v. Verizon Wireless New York, Inc., 252 F.3d 163, 168 (2d Cir. 2001) (discussing the nature of de novo review). Thus the degree to which judicial review affects the administrator's decision-making process corresponds with the "depth or penetration or exactingness" of judicial review to be employed. Lister v. Stark, 942 F.2d 1183, 1188, n. 6 (7th Cir. 1991) (quoting Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1052 (7th Cir. 1987)).

The scope of judicial review varies in accordance with the extent of discretion afforded the administrator. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Administrators empowered with "discretionary authority to determine eligibility for benefits or to construe the terms of the plan" are entitled to have their decisions reviewed deferentially. Id. Administrators not empowered with discretion are not accorded deference. Their decisions are reviewed de novo. Id. For these administrators, the potential exercise of

de novo review limits the range of choices available to them while administering the Plan. Administrators whose decisions are subject to only deferential review, on the other hand, are not as constrained by the possibility of judicial review.

Our review in Morton v. Smith, 91 F.3d 867 (7th Cir. 1996), of a benefits determination provides us with a helpful illustration of the latter principle. The plaintiff-beneficiary in Morton sought reimbursement of medical expenses he incurred as a result of jumping off a metal awning to the sidewalk below while intoxicated. Id. at 869. The plan's trustees (who served as administrators and were empowered with discretion to construe the plan's terms) denied his request, citing the plan's exclusion from coverage of "[a]ny . . . expense . . . result[ing] from an intentional-self-inflicted injury." Id. Relying on a decision reached by the Fifth Circuit while engaging in de novo review in a factually similar case, Morton argued that, contrary to how the trustees' interpreted the phrase, a "self-inflicted injury" is one that is substantially certain to result from an intentional act, e.g., his leap from the metal awning.

In affirming the district court's grant of summary judgment for the trustees, we reminded Morton that our standard of review limited our ability to override the trustees' decision. Id. at 872. We noted that the trustees had several interpretations to choose from, Morton's interpretation being only one, and that because we were engaging in deferential review we had to respect their choice to adopt a different interpretation. We further acknowledged that if we had been reviewing Morton's claim de novo we might have adopted his interpretation and overturned the trustees' decision. Id. As this illustration indicates, administrators empowered, like the trustees in Morton, with discretionary authority to construe the plan enjoy "a broad, unchanneled discretion to deny claims." Herzberger, 205 F.3d at 333. See also Foster McGaw Hosp. of Loyola Univ. of Chicago v. Bldg. Material Chaffeurs, Teamsters and Helpers Welfare Fund of Chicago, Local 786, 925 F.2d 1023, 1026 (7th Cir. 1991) ("[W]ith the

[administrator's] decision entitled to deference, the outcome is foredoomed.").

Allsteel's alteration of the Plan's language changed the standard of review by which a court would review its decisions, thereby granting Allsteel the same unchanneled discretion to deny claims. Before Allsteel altered the Plan's language to grant itself discretion to interpret and construe the Plan, its decision would have been subject to de novo review. Section 1.3 of the Plan, as originally drafted, was insufficient to trigger deferential review. See Krueger Int'l, Inc. v. Blank, 225 F.3d 806, 810 (7th Cir. 2000); Michael Reese Hosp. and Med. Ctr. v. Solo Cup Employee Hlth. Ben. Plan, 899 F.2d 639, 641 (7th Cir. 1990). But the language added by Allsteel ("The Company shall have discretionary authority to interpret and construe this Plan and to determine all questions arising under this Plan, including questions regarding eligibility, vesting and entitlement to benefits under the Plan.") was sufficient to trigger deferential review and expand the range of options available to Allsteel as administrator. See Trombetta, 102 F.3d at 1437-38; Krawczyk v. Harnischfeger Corp., 41 F.3d 276, 278 (7th Cir. 1994); Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 688 (7th Cir. 1992).

Just as an amendment that changes from universal to discretionary coverage for oral surgery immediately harms the insured by making his entitlement less certain, so too does the amendment here, which expands the range of permissible choices open to the administrator. By adding language that granted itself discretionary authority to determine eligibility under and to construe the Plan, Allsteel increased the likelihood that Johnson will, at some point, be denied benefits under the Plan. This correspondingly decreased the certainty of his Plan entitlements, causing him immediate injury. Thus we conclude that Johnson has sufficiently alleged injury-in-fact.

Our standing inquiry, however, does not end here. Although the parties asked us to decide only whether Johnson sufficiently alleged injury-in-fact, we must satisfy ourselves that the remaining elements of Article III's standing test

(causation and redressability) are met. Rhodes v. Johnson, 153 F.3d 785, 787 (7th Cir. 1998). As is apparent from our preceding discussion, we conclude that Johnson's injury was caused by Allsteel's amendment. We further believe that Johnson has alleged facts indicating that his injury is redressable by the courts. Among other forms of relief, Johnson seeks reformation of the Plan to eliminate the amended language. If Johnson is successful at trial, his injury would be redressed. Accordingly, we conclude that Johnson has met each of the requisites for standing under Article III./2 And we have no occasion to impose any pru-dential standing limitations in this case. Duke Power Co. v. Carolina Environmental Study Group, Inc., et al., 438 U.S. 59, 80-81 (1978) ("Where a party champions his own rights, and where the injury alleged is a concrete and particularized one which will be prevented or redressed by the relief requested, the basic practical and prudential concerns underlying the standing doctrine are generally satisfied when the constitutional requisites are met.").

We decline to reach Allsteel's remaining non-jurisdictional arguments supporting dismissal because they were not presented to the district court in the first instance. Zbaraz v. Quern, 596 F.2d 196, 202 (7th Cir. 1979).

III.  CONCLUSION

For these reasons, we Reverse the judgment of the district court and Remand the case for further proceedings.

FOOTNOTES

/1 For a discussion of the administrator's incentive to avoid intense judicial scrutiny, see George Lee Flint, Jr., ERISA: the Arbitrary and Capri-cious Rule under Siege, 39 Cath. U.L. Rev. 133, 181-82 (1989).

/2 We make no comment, however, on the merits of Johnson's claim.