# United States Court of Appeals
## For the First Circuit

No. 09-2661

JEFFREY R. TASKER,

Plaintiff, Appellant,

v.

DHL RETIREMENT SAVINGS PLAN ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lipez, Selya and Thompson,

Circuit Judges.

Robert S. Catapano-Friedman, with whom The Catapano-Friedman Law Firm was on brief, for appellant.
Jeremy P. Blumenfeld, with whom Allison N. Suflas and Morgan, Lewis & Bockius LLP were on brief, for appellees.

October 6, 2010

**SELYA**, **Circuit Judge**.  This appeal raises an issue of first impression at the federal appellate level concerning the workings of the anti-cutback rule of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1054(g), when viewed through the prism of a Treasury Department regulation, 26 C.F.R. § 1.411(d)-4.  The issue arises in the context of plaintiff-appellant Jeffrey R. Tasker's claim that a group of related entities — DHL Retirement Savings Plan, DHL Retirement Pension Plan, Employee Benefits Committee of DPWN Holdings (USA), Inc., and the DHL Retirement Pension Plan Committee (collectively, the defendants) — violated the anti-cutback rule when they eliminated his unexercised option to transfer funds from his profit-sharing plan account to his retirement plan.  Concluding, as we do, that the unambiguous language of the regulation allowed the defendants to eliminate the transfer option, we affirm the district court's dismissal of the claim.

## I.  BACKGROUND

Because this appeal follows the allowance of a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), we draw the facts from the plaintiff's complaint.  SEC v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010) (en banc).

The plaintiff toiled in the employ of Airborne Express, Inc. (Airborne) for more than three decades.  In 2003, DHL Holdings

-2-

(USA) Inc., now DPWN Holdings (USA), Inc., acquired Airborne. The plaintiff worked briefly for the acquirer (which, for ease in reference, we shall call DHL) and then retired in March of 2004.

While employed by Airborne, the plaintiff participated in both the company's profit-sharing and retirement plans. After he retired but before he began receiving benefits, Airborne's plans were merged into their DHL counterparts, namely, the DHL Savings Plan and the DHL Retirement Plan. Because the mergers themselves are not central to the issues on appeal, we refer throughout to the profit-sharing plan and the retirement plan, without further elaboration.

The retirement plan and the profit-sharing plan are both ERISA plans. The retirement plan is a defined benefit plan. See 29 U.S.C. § 1002(35). The benefit accruing to a participant under this plan is based on the participant's age, years of service, and average compensation. Section 4.01(A) of the retirement plan limns the relevant benefit formula:

> . . . . [A] Participant's Accrued Benefit shall be entirely determined under the formulas of this Section 4.01(A) . . .
>
> Subject to the offset under paragraph C of this Section 4.01, a Participant's Accrued Benefit under this paragraph shall be determined under the formula (a times c) + (b times d) where the terms have the following meaning:
>
> a = The number of years of the Participant's Years of Credited Service up to a maximum of 25 Years.

> b = The number of years of the Participant's Years of Credited Service which exceeds 25 Years.
>
> c = An amount equal to 2.0 percent of the Participant's Average Monthly Compensation.
>
> d = An amount equal to 0.5 percent of the Participant's Average Monthly Compensation.

The benefit computed under this formula is subject to an offset, that is, a reduction based on the participant's account balance in the profit-sharing plan. The offset is spelled out in Section 4.01(C):

> A Participant's benefit determined under paragraphs A and/or B above shall be reduced by the Participant's Profit Sharing Plan Annuity Benefit, if any, as determined under this paragraph . . . . The annuity benefit derived from the Participant's nonforfeitable interest in the Participant's Profit Sharing Plan account balance shall mean a monthly Single Life Annuity (SLA) payable at the Participant's Normal Retirement Age. This monthly SLA shall be determined as the Actuarial Equivalent (without regard to any pre-retirement mortality) of the Participant's nonforfeitable Profit Sharing Plan account balance as of the Profit Sharing Plan Valuation Date immediately preceding the Participant's date of termination, assuming no future Employer contributions.

The profit-sharing plan is a defined contribution plan. See 29 U.S.C. § 1002(34). A participant's benefit under this plan is computed with reference to his account balance, which may be taken as either a lump sum or an annuity. The account balance, in turn, is the product of all amounts contributed by the participant and left in the plan, net of gains or losses on his investments.

-4-

The plaintiff's remonstrance stems from the interlocking offset provision. When he retired in 2004, the retirement plan permitted a participant, prior to his election to begin receiving benefits, to transfer the balance from his profit-sharing plan account into the retirement plan. The corresponding provision of the profit-sharing plan enabled a participant to take full advantage of this option by transferring his account balance from that plan to the retirement plan. Such a transfer, when effected, would drop the participant's profit-sharing plan account balance to zero and, thus, avoid any offset. This transfer option was in place when DHL acquired Airborne. It was likewise in place when the plaintiff retired, in March of 2004, at age 57.

Upon his retirement, the plaintiff stated his intention to commence the receipt of his annuity benefit on October 1, 2008, that is, at age 62. His account balance in the profit-sharing plan at retirement was $370,388.22.

As he readied himself to leave the workplace, the plaintiff requested and received benefit information from DHL. The company furnished him with written estimates detailing the benefit options then available to him. These estimates included projected benefit levels based on the formula contained in Section 4.01(A) of the retirement plan, with an offset based on Section 4.01(C). Predicated on his years of service and average compensation, his accrued benefit was estimated to be $5,824.27 per month, which was

reduced to $4,775.90 by a factor related to his decision to begin receiving benefits before age 65. The offset from his profit-sharing account, which was also affected by age-related factors, was estimated to be $4,588.00 per month. The amalgamation of these two numbers resulted in a projected annuity benefit of $187.90 per month. This estimate assumed that the plaintiff's profit-sharing account balance would remain intact and at his disposal.

DHL furnished the plaintiff with a separate estimate of what his benefit might be if he exercised the transfer option permitted under Section 7.11 of the retirement plan: $4,163.92 per month as a joint survivor annuity — a figure that contemplated emptying his profit-sharing account. This estimate, like the other estimate, made pellucid that it was merely a projection, not a final calculation or a guarantee.

At the time that he received these estimates, the plaintiff could have elected to transfer his profit-sharing plan account balance into the retirement plan account, but he eschewed that course. Moreover, he did not indicate at that time how he wished to receive his benefit.

Effective December 31, 2004, DHL amended the retirement plan to eliminate the transfer option and prohibit transfers of the kind previously permitted under Section 7.11. Without amending any other language in Section 7.11, the amendment stated that the retirement plan "shall not accept transfers of any Profit Sharing

account balances after December 31, 2004."  DHL simultaneously amended Section 8.04C(3) of the profit-sharing plan to eliminate a participant's right to transfer funds to the retirement plan.

In 2008, the plaintiff tried to exercise the transfer option and begin the distribution of his benefit as adumbrated in the second estimate that he had received in 2004.  In letters dated July 22 and August 28, 2008, the plan administrator informed him that the December 2004 amendments foreclosed his use of the transfer option (and, thus, effectively rendered the annuity benefit described in the second estimate unavailable).  The letters explained what payments the plaintiff could expect: either an annuity of $2,200 per month (should he take his profit-sharing account in annuity form and combine it with his retirement annuity)[1] or an annuity of $187 per month (which would leave the entire balance in his profit-sharing account intact).  The profit-sharing balance was an important dictum; it had grown to $513,754.58 by this time.[2]  Either of the available alternatives was a far cry from the annuity benefit projected in the second estimate.

---

[1] The difference between his estimated annuity under the retirement plan in the event of a transfer and the estimated annuity under the profit-sharing plan results from a variation in the actuarial assumptions applied under the two plans.

[2] Although investments increased this amount between 2004 and 2008, Section 4.01 fixed the offset amount under that plan at a value determined before the plaintiff's separation from service.

After unsuccessfully pursuing an administrative appeal, the plaintiff brought suit in the federal district court. He alleged a violation of ERISA's anti-cutback rule and sought an award of damages under 29 U.S.C. § 1132(a)(1)(B) (count 1). He also asserted related claims for breach of fiduciary duty (count 2) and injunctive and declaratory relief (count 3). The defendants moved to dismiss the complaint. The district court granted their motion in substantial part, rejecting the core claim that the defendants had violated the anti-cutback rule. Tasker v. DHL Ret. Sav. Plan, No. 09-cv-10198, 2009 WL 4669936, at *5 (D. Mass. Nov. 20, 2009). The court did not dismiss the plaintiff's separate claim, embedded in count 1, that the defendants had improperly denied him the right to take his profit-sharing benefit in the form of an annuity. Id. Later, the plaintiff voluntarily dismissed that separate claim; the district court entered a final judgment; and this timely appeal ensued.

## II.  STANDARD OF REVIEW

We review de novo a district court's disposition of a motion to dismiss for failure to state a claim upon which relief can be granted. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005). We accept as true all well-pleaded facts set out in the complaint and draw all reasonable inferences from them in favor of the pleader. Tambone, 597 F.3d at 441-42.

A complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But even though a complaint need not plead "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), it nonetheless must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Thus, a complaint must do more than recite the formal elements of a cause of action; it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442 (citing Twombly, 550 U.S. at 555).

## III. ANALYSIS

The Supreme Court has noted the "centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them." Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 743 (2004). In keeping with this object, the substantive protections of ERISA "are designed largely 'to safeguard the financial integrity of employee benefit funds, to permit employee monitoring of earmarked assets, and to ensure that

-9-

employers' promises are kept.'" Alexander v. Brigham & Women's Physicians Org., Inc., 513 F.3d 37, 43 (1st Cir. 2008) (quoting Belanger v. Wyman-Gordon Co., 71 F.3d 451, 454 (1st Cir. 1995)). To that end, ERISA memorializes an anti-cutback rule, which provides in relevant part:

> Decrease of accrued benefits through amendment of plan
>
> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(d)(2) or 1441 of this title.
>
> (2) For purposes of paragraph (1), a plan amendment which has the effect of —
>
> . . .
>
> (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

29 U.S.C. § 1054(g). A counterpart provision of the Internal Revenue Code mirrors this ERISA provision. See 26 U.S.C. § 411(d)(6)(B)(ii).

The theme of the plaintiff's claim is that the December 2004 plan amendments eliminating the transfer option contravene this rule. A principal difficulty with this argument is that the Treasury Department, acting under a lawful delegation of authority from Congress, see id., has carved a number of exceptions out of the rule. Regulations lawfully promulgated by the Secretary of the Treasury (the Secretary), which interpret the anti-cutback rule,

-10-

command an appreciable measure of judicial deference. See Cent. Laborers' Pension Fund, 541 U.S. at 747; Hoult v. Hoult, 373 F.3d 47, 54-55 (1st Cir. 2004).

Included in the compendium of relevant Treasury Department regulations is a clear grant of safe passage for plan amendments that eliminate transfer options (even when the elimination may have the incidental effect of reducing benefits). The regulation states:

> Q-2. To what extent may section 411(d)(6) protected benefits under a plan be reduced or eliminated?
>
> . . .
>
> A-2. (b)(2)(viii) Provisions for transfer of benefits between and among defined contribution plans and defined benefit plans. A plan may be amended to eliminate provisions permitting the transfer of benefits between and among defined contribution plans and defined benefit plans.

26 C.F.R. § 1.411(d)-4, Q&A-2(b)(2)(viii).

In this instance, both the profit-sharing plan and the retirement plan were "amended to eliminate provisions permitting the transfer of benefits" from one plan to the other. At first blush, then, resolving this case seemingly requires only that we travel the path that the Secretary already has beaten. The question posed here directly tracks Q-2 of the regulation: did the defendants violate the anti-cutback rule, ERISA § 204(g), by eliminating the transfer option, when that elimination had the incidental effect of

-11-

significantly lowering the plaintiff's projected benefit? The answer, a clear "no," directly tracks the teachings of A-2: "[a] plan may be amended to eliminate provisions permitting the transfer of benefits between and among . . . plans," even if that elimination reduces an accrued (but unclaimed) benefit. Accordingly, as the district court recognized, the regulation insulates the challenged plan amendments from the anti-cutback rule.

In an effort to blunt the force of this reasoning, the plaintiff posits that a series of obstacles block the path illuminated by the regulations. Before us, his primary contention is that other language in the relevant regulations has a limiting effect. He suggests that this language, which describes the authority exercised by the Secretary in promulgating the regulations, bars a "plain meaning" interpretation of the transfer option exception. This language reads in pertinent part:

> In general. The Commissioner may, consistent with the provisions of this section, provide for the elimination or reduction of section 411(d)(6) protected benefits that have already accrued only to the extent that such elimination or reduction does not result in the loss to plan participants of either a valuable right or an employer-subsidized optional form of benefit where a similar optional form of benefit with a comparable subsidy is not provided or to the extent such elimination or reduction is necessary to permit compliance with other requirements of section 401(a) . . . .

26 C.F.R. § 1.411(d)-4, Q&A-2(b)(1). Specifically, the plaintiff asserts that the qualification that exceptions "not result in the

-12-

loss to plan participants of either a valuable right or an employer-subsidized optional form of benefit" precludes a reading of the transfer option exception that allows the reduction of an accrued benefit.

This asseveration is brand, spanking new. The plaintiff did not advance any argumentation based on this language in the district court. That omission works a forfeiture of the argument here. United States v. Leahy, 473 F.3d 401, 409-10 (1st Cir. 2007); Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987). The fact that, in the court below, the plaintiff challenged the defendants' reading of the regulation on a different theory does not preserve the new argument that he proffers here. See Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003) (explaining that "a party may not advance for the first time on appeal either a new argument or an old argument that depends on a new . . . predicate"); Clauson, 823 F.2d at 665-66 (similar).

We review forfeited claims for plain error — a hard-to-meet standard that is "not appellant-friendly." Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 14 (1st Cir. 2007). "[W]e will resuscitate a forfeited argument only if the appellant demonstrates that '(1) an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings.'" Id.

at 14-15 (quoting <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001)).

We assume, for argument's sake, that plain error review is available here.[3]  The plaintiff's suggestion that this earlier language somehow derails a straightforward application of the transfer option exception cannot satisfy this uncompromising standard.  Section 1.411(d)-4, Q&A-2(b)(2)(viii) asks and answers the precise question on which the plaintiff's claim turns.  It states unambiguously that transfer options may be eliminated even if such an action reduces a section 411(d)(6) benefit.  We cannot say that, by applying this clear, direct language, according to its tenor, the district court committed an obvious error.

The separate language of section 1.411(d)-4, Q&A-2(b)(1) does not change this calculus.  The most that can be said is that section 1.411(d)-4, Q&A-2(b)(1) might help to support a challenge to the reasonableness of the transfer option exception.  But the plaintiff acknowledged below that he was not making a reasonableness challenge, <u>see</u> <u>Tasker</u>, 2009 WL 4669936, at *4, so any such challenge is deemed waived.  <u>See</u> <u>Redondo-Borges</u> v. <u>U.S. Dep't of HUD</u>, 421 F.3d 1, 6 (1st Cir. 2005).

---

[3] It may not be.  The record that would be needed to flesh out the plaintiff's present claim is largely undeveloped.  Thus, the availability of plain error review is questionable.  <u>See</u> <u>United States</u> v. <u>Torres</u>, 162 F.3d 6, 11 n.2 (1st Cir. 1998) (affirming the application of this rule to the failure to develop a factual record supporting a suppression claim).

Last — but far from least — even if we were inclined to overlook this waiver and inquire into the Secretary's authority to promulgate the transfer option exception — and we are not — the answer to such a query would fail to demonstrate plain error. The Secretary has "the ultimate authority to interpret the[] overlapping anti-cutback provisions" of ERISA and the Internal Revenue Code. Cent. Laborers' Pension Fund, 541 U.S. at 747. It is not obvious that the Secretary's broad authority falls short of encompassing the regulation at issue here.

The plaintiff advances two other bases for reading section 1.411(d)-4, Q&A-2(b)(2)(viii) more narrowly than its language suggests. Both of these theories were preserved below.

To begin, the plaintiff asks us to interpret the transfer option exception as permitting only the elimination of transfer options themselves. Under this reading, the "transfer" is the "protected benefit," and any other diminutions resulting from that elimination remain prohibited by the anti-cutback rule. This reading is implausible.

The anti-cutback rule describes with specificity the set of benefits that it safeguards: accrued benefits, early retirement benefits, retirement-type subsidies, and optional forms of benefits. See 26 U.S.C. § 411(d)(6); 29 U.S.C. § 1054(g). The rule does not afford protection for "ancillary benefits, . . . or any other

-15-

benefits that are not described in section 411(d)(6)." 26 C.F.R. § 1.411(d)-3(b)(3)(i).

The described set of protected benefits does not include transfer options. Consequently, the transfer option is an ancillary benefit that may lawfully be eliminated through a permitted plan amendment (such as an amendment defenestrating a transfer option).

The text of the regulation reinforces this interpretation of "protected benefits." Under that phraseology, protected benefits may "be reduced or eliminated" by an amendment that "eliminate[s] provisions permitting the transfer of benefits between and among defined contribution plans and defined benefit plans." Id. § 1.411(d)-4, Q&A-2(b)(2)(viii). The only sensible construction of this language is that even protected benefits may be reduced or eliminated to the extent that the reduction or elimination occurs as an incidental effect of eliminating a transfer option.

The limitation that the plaintiff advocates — that reductions resulting from the elimination of transfer options are still prohibited — is nowhere contained in the text of the regulation itself. This is especially significant because the Secretary did include similar restrictions in other parts of the same regulations. See, e.g., 26 C.F.R. § 1.411(d)-4, Q&A-2(a)(3)(ii) (explicitly limiting the permissible reductive effect of modifications to options to receive annuities as cash payments). That no such language limits the reductive effects of the

-16-

elimination of a transfer option favors the conclusion that no such circumscription was meant. See Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002) ("[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotations omitted); Morales v. Sociedad Española de Auxilio Mutuo y Beneficencia, 524 F.3d 54, 59 (1st Cir. 2008) (explaining that canons of statutory construction are "fully transferable to the construction of regulations"); see also United States v. DiTomasso, ___ F.3d ___, ___ (1st Cir. 2010) [No. 08-2567, slip op. at 14].

The plaintiff's last argument is equally unavailing. He insists that, notwithstanding the language of section 1.411(d)-4, Q&A-2(b)(2)(viii), two other Treasury regulations forbid the elimination of a transfer option when doing so would result in a reduction of an accrued benefit. The first of these regulations states in pertinent part:

> The prohibition against the reduction or elimination of section 411(d)(6) protected benefits already accrued applies to plan mergers, spinoffs, transfers, and transactions amending or having the effect of amending a plan or plans to transfer plan benefits. Thus, for example, . . . if an employee's benefit under a defined contribution plan is transferred to another defined contribution plan (whether or not of the same employer), the optional forms of benefit available with respect to the employee's benefit accrued

-17-

under the transferor plan may not be eliminated or reduced except as otherwise permitted under this regulation.

26 C.F.R. § 1.411(d)-4, Q&A-2(a)(3)(i). The second regulation states in pertinent part:

> Section 411(d)(6) protected benefits may not be eliminated by reason of transfer or any transaction amending or having the effect of amending a plan or plans to transfer benefits. Thus, for example, except as otherwise provided in this section, an employer who maintains a money purchase pension plan that provides for a single sum optional form of benefit may not establish another plan that does not provide for this optional form of benefit and transfer participants' account balances to such new plan.

Id. § 1.411(d)-4, Q&A-3(a).

In the plaintiff's view, his situation is analogous to the situations described in these regulations because, in 2004, his annuity was estimated at $4,163.92 per month (if he used the transfer option full-scale), yet in 2008, after the transfer option was eliminated, his annuity was estimated at only $2,200 per month. If these other regulations mean what they say, the plaintiff asserts, the elimination of his option to transfer funds from his profit-sharing plan account to the retirement plan (and, thus, secure the higher annuity) must constitute a violation of the anti-cutback rule.

The plaintiff's indignation is understandable, but his reliance on the cited regulations is misplaced. They merely recapitulate the anti-cutback rule, illustrating its application to

-18-

plan mergers, transfers, and amendments. They do not deal, directly or inferentially, with the transfer option exception. To construe these general regulations to override a separate, highly specific regulation that clearly and unambiguously permits the elimination of a transfer option even when that elimination would have the incidental effect of reducing an accrued benefit would turn the regulatory scheme on its head. "It is a conventional canon of legal interpretation that specific provisions trump more general ones," Harry C. Crooker & Sons, Inc. v. OSHRC, 537 F.3d 79, 84 (1st Cir. 2008), and that canon applies here.

This sockdolager is the inclusion, in the general regulations cited by the plaintiff and reproduced above, of the phrases "except as otherwise provided in this section" and "except as otherwise permitted in this section." The elimination of transfer options is "otherwise provided" by section 1.411(d)-4, Q&A-2(b)(2)(viii) and, accordingly, plan amendments eliminating transfer options are "otherwise permitted," even if their effect is to shrink accrued benefits.

To sum up, none of the pitfalls proposed by the plaintiff would justify us in abandoning the path demarcated by the regulations. The only reasonable conclusion that can be drawn is that section 1.411(d)-4, Q&A-2(b)(2)(viii) permitted the defendants to eliminate the transfer option.

**IV. CONCLUSION**

This is a hard case — hard in the sense that it requires us to deny relief to a plaintiff for whom we have considerable sympathy. After all, the plaintiff worked for many years, planned for his retirement, and now finds that the annuity he can collect is roughly half the size that he had anticipated. On general notions of fairness, the plaintiff deserves better.

But this case — like most hard cases — cannot be decided on generalized notions of fairness. ERISA is a creature of statute, fleshed out by regulations. Subject to constitutional concerns not present here, courts must follow the path demarcated by Congress and the Executive Branch. Where, as here, the statute and the implementing regulations are clear, an inquiring court must follow their lead. No judge is free to disregard the law simply because he or she thinks that it would be fairer to do so in a given case.

We have warned before, in the ERISA context, that hard cases have a propensity to make bad law. See, e.g., Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 487 (1st Cir. 1989). This case is of that genre. Were we arbitrarily to ignore an unambiguous regulation allowing the action taken by the defendants, we would be making bad law. We must abjure so wayward an approach.

Of course, the Secretary could modify the regulations to minimize or abate inequities of the sort that the plaintiff has experienced here. The Secretary, however, has not chosen to do so.

By the same token, Congress could revise the statute, but it too has refrained from doing so.  In the absence of any such ameliorative action by either Congress or the Secretary, our hands are tied.

We need go no further.  For the reasons elucidated above, we hold that the challenged plan amendments were permissible and, therefore, the elimination of the transfer options did not violate ERISA's anti-cutback rule.

**Affirmed**.  **No costs**.