ESTATE OF Walter JAJUGA, Anthony Scibelli, Executor, Kristen A. Jajuga–Monteith, Vincent M. Jajuga and Anthony C. Jajuga, Plaintiffs

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Civil Action No. 10–30016–MAP.

United States District Court, D. Massachusetts.

Oct. 7, 2010.

Patrick C. DiCarlo, Alston & Bird LLP, Atlanta, GA, for Defendant.

Terrence A. Low, Law Office of Terrence A. Low, Springfield, MA, Joseph F. Ryan, Lyne, Woodworth & Evarts LLP, Boston, MA, for Plaintiffs.

*MEMORANDUM AND ORDER WITH REGARD TO THE STANDARD OF REVIEW AS WELL AS PLAINTIFFS' MOTIONS TO SUPPLEMENT THE RECORD AND FOR PRE-TRIAL DISCOVERY (Document Nos. 15 and 17)*

NEIMAN, United States Magistrate Judge.

This action concerns an employee benefit plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001–1461. Plaintiffs—the Estate of Walter Jajuga, Anthony Scibelli, Executor, Kristen A. Jajuga—Monteith, Vincent M. Jajuga and Anthony C. Jajuga—have invoked 29 U.S.C. § 1132 under which a civil action may be brought by a participant or beneficiary to enforce rights under the terms of a plan. The Prudential Insurance Company of America ("Defendant") is the administrator of the plan at issue.

Presently before the court are two motions filed by Plaintiffs in accord with the court's May 19, 2010 Scheduling Order. The first (Document No. 15) seeks documents which Plaintiffs claim ought to have been produced during the administrative process. The second (Document No. 17) seeks certain pretrial discovery. Also at issue is the standard of review which is to be applied by the court when reviewing Defendant's actions in the case at bar.

For the reasons which follow, the court will allow in part Plaintiffs' motion to supplement the record, deny Plaintiffs' motion for discovery, and conclude that a *de novo* standard of review should apply.

### I. BACKGROUND

It is undisputed that Walter Jajuga ("Decedent"), while employed by Mercedes–Benz, USA Inc. ("Mercedes–Benz"), participated in an ERISA plan which provided a waiver of premiums for life insurance benefits, funded through a group policy insured by Prudential, during a period of disability. Decedent ceased working due to back pain on May 6, 1997, and received disability benefits from Mercedes–Benz. He also applied for the waiver of premiums. That application was denied, apparently in November of 1999. Because an unwritten document to that

effect could not be located, Decedent was allowed by Defendant to pursue administrative appeals beginning in 2005. He died on December 31, 2008, approximately four months prior to his initiation of a third-level appeal by his Estate. When the administrative process was completed, Decedent's beneficiaries commenced the instant action.[1]

## II. DISCUSSION

### A. Plaintiffs' Motions to Supplement the Record and for Pre–Trial Discovery

██ Having heard the parties' countervailing positions at oral argument on July 22, 2010, Plaintiffs' two motions can be dealt with in fairly short order. First, the court will allow Plaintiffs' four-part Motion to Supplement the Record, in part, as follows. The court will deny, as too broad, Plaintiffs' request that "all instruments under which the plan is established or operated" be made part of the record. The court will allow Plaintiffs' request with respect to all service agreements in effect at the applicable time between Defendant and Mercedes–Benz, Defendant having indicated that these documents are already part of the record. The court will grant without objection Plaintiffs' request for service agreements and/or contracts between Defendant and MLS Group of Companies, Inc., at the time it provided medical reviews of the claim in this action. The court, however, will deny as too broad Plaintiffs' request for "all statements" concerning policy or guidance with respect to the plan concerning claimant's diagnosis, the court having determined that the record provided by Defendant is otherwise complete.

██ Second, the court will deny Plaintiffs' Motion for Pre–Trial Discovery. As the First Circuit has directed, the scope of a court's review of an ERISA benefit denial is generally limited to the administrative record irrespective of whether the standard of review is *de novo* or deferential. *See Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519–20 (1st Cir.2005). According to the court, "at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." *Liston v. UNUM Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir.2003). "This is true as to discovery as well, regardless of whether the standard of review is de novo or deferential." *Orndorf*, 404 F.3d at 520. Simply put, Plaintiffs have not made that showing. Perhaps more importantly, where review is *de novo* as the court has determined here (see *infra*), the issue is simply whether the court believes there is sufficient evidence to support a finding of disability.

### B. The Standard of Review

██ Although the issue concerning the standard of review is somewhat more complicated, the resolution of that issue is clear. A court must review a plan administrator's denial of benefits under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the plan reserves discretionary authority, denials are subject to a more deferential arbitrary and capricious standard and will be upheld only if the

---

1. It should be noted that Decedent had also purchased an individual life insurance policy which contained a waiver of premium feature in the event of disability. Curiously, Defendant approved his claim for waiver of premiums under that policy based, evidently, on his disabled status.

decision was "within [the administrator]'s authority, reasoned, and supported by substantial evidence in the record." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998) (citations and internal quotation marks omitted). *See also Denmark v. Liberty Life Assur. Co.*, 566 F.3d 1, 5–6 (1st Cir.2009).

Defendant maintains that an abuse of discretion, not a *de novo*, standard should apply. In support, Defendant points to a summary of plan benefits and claim procedures—appended to a booklet that describes the benefits at issue—which indicates that Defendant "has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." (Defs.' Mem. Law Re Standard of Review ("Defs.' Brief"), Exhibit.) This language, Defendant asserts, confers discretion upon it and, accordingly, calls for an abuse of discretion standard.

Defendant's argument raises two issues, the resolution of at least one favors application of a *de novo* standard of review. As to the first issue, the discretionary language cited by Defendant is contained only in a plan summary, not the plan booklet. Plaintiff argues that the booklet, not the plan summary, should control and, hence, a *de novo* standard should apply simply because the plan booklet contains no discretionary language. *See Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1161 (9th Cir.2001). For its part, Defendant believes the distinction between the plan and plan summary is of little importance. *See Wade v. Life Ins. Co. of N. Am.*, 271 F.Supp.2d 307, 318 (D.Me. 2003); *Miller v. Nortel Networks Long Term Disability Plan*, 2005 WL 152127, *9 (D.N.H. Jan. 25, 2005). Since ERISA expressly requires a plan summary that is separate from the formal plan document, Defendant argues, it also contemplates that an employer's benefits plan will consist of multiple documents. *See Curran v. Kemper Nat'l Servs.*, 2005 WL 894840, at *5 (11th Cir. Mar. 16, 2005) (unpublished) (citing 29 U.S.C. § 1024(b)(4)).

Even were the court to accept Defendant's argument on this score, however, Defendant faces a second, more fundamental problem, namely, the fact that the discretionary language upon which Defendant now relies was not included in the plan summary *until January 1, 2000*. Thus, neither the plan nor any summary thereof contained discretionary language at the time Decedent enrolled in it on July 15, 1991, or when he stopped working on May 6, 1997, or when he requested that his life insurance premiums be waived on September 10, 1998. Granted, a number of courts have concluded that discretionary plan language applies at the time an administrator makes the benefits determination, even if the participant's claim was filed before such language was added to the plan. *See, e.g., Smathers v. Multi–Tool, Inc.*, 298 F.3d 191, 196–97 (3d Cir.2002) ("Procedural provisions of a plan such as this, containing a grant of discretionary authority to the administrators, are not implicated until the administrator actually exercises that authority."). Here, however, Defendant's original decision to deny the requested waiver was made in November of 1999, *before* the discretionary language was inserted into the plan summary on January 1, 2000. Thus, whatever merit there is to applying plan language in effect at the time of an administrator's decision, rather than the date of a claimant's application, that approach actually supports Plaintiffs' argument for a *de novo* standard.

Nonetheless, Defendant argues, albeit briefly, that the discretionary language controls because "it went into effect during the administrative process and well before

[Defendant]'s September 5, 2006 denial of Decedent's first-level appeal as well as prior to the subsequent second and third-level appeals." (Defs.' Brief at 3–4.) As described, the appellate process stretched out over a lengthy period of time. In essence, Defendant would have the court apply the standard in effect *during* the administrative appeals process, not the standard in existence when Decedent applied for and was originally denied the waiver of premiums. Relatedly, Defendant asserts, it was only because Defendant permitted the appeals process to be revived in 2005, significantly after the original denial, that enabled Plaintiffs to even pursue the matter further.

The court disagrees. First, there is nothing in the record which indicates that any delay in pursuing administrative appeals can be attributed to Decedent rather than Defendant; the fact that the appellate process commenced several years after the original denial is of little moment. Second, the court is reluctant to apply a narrower scope of review which was created via a plan amendment only after Defendant first denied Decedent's application for a waiver of insurance premiums. It is the original denial which remains at issue before the court, despite later affirmations of that denial during the administrative process.

To be sure, a plan amendment which simply incorporates discretionary language, does not necessarily change the substantive benefits available to a participant. *See Smathers,* 298 F.3d at 195. Moreover, it appears to be well settled that, except for benefits which are vested, controlled by other plan language, and/or contracted for, employers or other plan sponsors are generally free under ERISA to adopt, modify, or terminate their plans for any reason at any time. *See Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S.

73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). *See also Central Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 744, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004) (ERISA's "anti-cutback" rule prohibits a plan amendment which expands categories of post-retirement employment that would trigger suspension of accrued benefits); *Tasker v. DHL Retirement Savings Plan,* 621 F.3d 34 (1st Cir.2010) (discussing "anti-cutback" rule).

This general principle, however, does not necessarily mean that a court should apply a narrower scope of review incorporated into a plan in the midst of the decision-making process. First, a change in the scope of an administrator's discretion is not without significant consequences. As the Seventh Circuit has explained, "[a]n increased amount of discretion opens up to the administrator administering the plan a greater range of permissible choices." *Johnson v. Allsteel, Inc.,* 259 F.3d 885, 888 (7th Cir.2001). "This expanded range," the court continued, "renders 'less solid' the participant's benefits by shifting risk to the participant." *Id.* A like sentiment has been voiced by the Second Circuit: "There is no doubt in our minds that a right that may be denied by an administrator's *incorrect,* but not arbitrary, interpretation of the plan is substantively diminished as compared with one not subject to erroneous decisions." *Gibbs v. CIGNA Corp.,* 440 F.3d 571, 578 (2d Cir.2006) (emphasis in original).

■ Second, and perhaps more to the point, courts have generally applied the scope of review in place when a plan participant's benefit is denied, if not sooner. *See Gibbs,* 440 F.3d at 576 (benefits vest no later than when an employee becomes disabled, absent explicit language stating otherwise) (citing *Feifer v. Prudential Ins. Co. of Am.,* 306 F.3d 1202, 1212 (2d Cir. 2002)); *Hackett v. Xerox Corp.,* 315 F.3d

771, 774 (7th Cir.2003) ("absent any language suggesting ambiguity on the vesting question, the controlling plan must be the plan in effect at the time the benefits were denied"); *Blessing v. Deere & Co.*, 985 F.Supp. 899, 903 (S.D.Iowa 1997) ("an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied"). Although the First Circuit has not weighed in on this issue, there is no reason why the result should be any different here where there was no discretionary plan language in effect when Decedent applied for and was originally denied a waiver of life insurance premiums. Again, the later administrative process, prior to which discretionary language was inserted into the plan, did no more than affirm that original denial.

## III. CONCLUSION

For the reasons stated, the review of Defendant's denial of Plaintiffs' request for a waiver of insurance shall proceed under a *de novo* standard. In addition, Plaintiffs' Motion to Supplement the Record is ALLOWED IN PART (as described above) and Plaintiffs' Motion for Pre–Trial Discovery is DENIED.

IT IS SO ORDERED.