UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kinetic Systems Inc.,
     Plaintiff

     v.                                    Case No. 20-cv-1125-SM
                                           Opinion No. 2021 DNH 031

IPS-Integrated Project Services, LLC
and Lonza Biologics, Inc.,
     Defendants


**O R D E R**


     Kinetic Systems, Inc. brings this action for breach of contract and quantum meruit, seeking nearly $14 million it claims to be owed for work it performed on a construction project in Portsmouth, New Hampshire.  In its complaint, Kinetic advances three claims: breach of contract against the project's general contractor, Integrated Project Services ("IPS") (count one); quantum meruit/unjust enrichment against IPS (count two); and, in the alternative, quantum meruit/unjust enrichment against the project owner, Lonza Biologics (count three). Defendants move to dismiss, saying Kinetic's claims are premature.  In short, defendants allege that Kinetic has failed to follow contractually-mandated prerequisites to filing suit.

For the reasons discussed, defendants' motion to dismiss is granted in part and denied in part.

**Standard of Review**

In considering a motion to dismiss, the court accepts all well-pled facts alleged in the complaint as true, disregarding legal labels and conclusions, and resolves reasonable inferences in the plaintiff's favor. See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017). To avoid dismissal, the complaint must allege sufficient facts to support a "plausible" claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To satisfy the plausibility standard, the factual allegations in the complaint, along with reasonable inferences, must show more than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Lyman v. Baker, 954 F.3d 351, 359-60 (1st Cir. 2020) ("For the purposes of our [12(b)(6)] review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.") (citation and internal punctuation omitted).

In other words, the complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations that, if

assumed to be true, allow the court to draw the reasonable and plausible inference that the plaintiff is entitled to the relief sought.  See Tasker v. DHL Ret. Savings Plan, 621 F.3d 34, 38-39 (1st Cir. 2010).


## Background

Integrated Project Services ("IPS") was the general contractor for a construction project owned by Lonza Biologics in Portsmouth, New Hampshire.  Kinetic was a subcontractor on that project.

IPS and Kinetic entered into two contracts related to the Portsmouth project.  The first was signed in December of 2018, and concerns mechanical work and plumbing services to be supplied by Kinetic (document no. 9-3) (the "Early Mechanical Contract").  The contract provides that, in exchange for its services, Kinetic will be paid a fixed sum of $2,376,659.  The second contract was signed in April of 2019, and concerns piping work to be supplied by Kinetic (document no. 9-4) (the "Process Contract").  That contract provides that, in exchange for its services, Kinetic will be paid a fixed sum of $1,800,000.

As is customary in the construction industry, both contracts provide a mechanism by which the parties agreed to

3

resolve issues arising from any changes to the scope of Kinetic's work, including the amount Kinetic would be paid for additional work.  Before performing any work beyond that specified in the contracts, Kinetic is required to first give IPS notice of a proposed change, submit documentation in support of it, and obtain IPS's agreement to it.  See Early Mechanical Contract at Section 6; Process Contract at Section 6.  If the parties are unable to agree upon a price for Kinetic's additional work, the contracts allow IPS to compel Kinetic to perform the work (via "Change Directive"), after which the parties are committed to agree upon an appropriate adjustment to the amount to be paid to Kinetic.  That process of negotiating, implementing, and paying for change orders is generally referred to as the "Section 6 Project Level Negotiations."

If the parties are unable to fully resolve any disagreements through the Section 6 Project Level Negotiations, the contracts provide the means by which they will resolve any lingering disputes.  Section 12 of each contract, entitled "Claims and Disputes between IPS and Subcontractor," sets forth a mandatory three-step dispute resolution process.

> The claims or disputes "shall first be attempted to be resolved by good-faith negotiation between senior management of the Parties."

Second, if that process is unsuccessful, "then the Parties agree to try in good faith to settle the claims or disputes (or remaining portion thereof) by mediation administered by the American Arbitration Association."

Finally, if unresolved disputes remain, the contracts establish a bifurcated dispute resolution process, depending on the amount at issue.

> For disputes involving amounts less than $250,000, the parties agree that such disputes shall be resolved by arbitration.

> For disputes involving $250,000 or more, the parties agree that they may be resolved, at IPS's election, by either arbitration or by civil litigation to be filed exclusively in the state or federal courts of the Commonwealth of Pennsylvania.

See Early Mechanical Contract at Section 12.2; Process Contract at Section 12.2 ("Section 12 Dispute Resolution") (emphasis supplied).

The complaint alleges that Kinetic submitted, and IPS approved, several large change orders for which Kinetic has not yet been paid:

> The Early Mechanical and Process contracts, as amended, are referred to herein as the Contracts. IPS implemented and the parties agreed to several large change orders under the Contracts pursuant to which Kinetics provided a substantial amount of additional labor and materials for consumption and/or use in Lonza's building(s) and systems.

5

> Defendant IPS repeatedly agreed that it would pay
> Kinetics for its material and labor costs associated
> with the Contracts, including all change orders.
>
> Kinetics reasonably relied upon these promises and
> inducements in performing work and providing materials
> to [the project].

Complaint (document no. 1-2) at paras. 15-17 (emphasis supplied). Moreover, the complaint alleges that Kinetic has "complied with all material terms of the Contracts in providing labor and material" to the project. Id. at para. 24. In total, says Kinetic, it is owed approximately $3,650,000 under the Early Mechanical Contract, and $10,320,000 under the Process Contract. Id. at para. 21.

According to Kinetic, the parties are at an impasse: Kinetic says it has complied with all of its contractual obligations, yet IPS refuses to approve its requests for payment. Moreover, IPS has ignored Kinetic's request that IPS either invoke the arbitration provisions of the contracts or bring a legal proceeding to resolve the parties' disputes. Meanwhile, says Kinetic, IPS sits on roughly $14 million it is properly owed and, at best, is slow-walking Kinetic through the contractually-mandated dispute resolution process (conduct that, if done in bad faith, could itself constitute a breach).

6

**Discussion**

I.    Claims Against the General Contractor, IPS.

In support of their motion to dismiss Kinetic's breach of contract claim against IPS, defendants dispute the complaint's assertion that Kinetic has "complied with all material terms of the contracts."  Rather, say defendants, Kinetic failed to follow the three-step, contractually-mandated dispute resolution process prior to filing this suit, claiming that when Kinetic filed suit, "project level negotiations under Section 6 had not concluded on approximately two-thirds of the proposed changes as required, and in fact continued well after Plaintiff filed suit. Much of Plaintiff's claim had yet to reach the Section 12 dispute resolution stage when suit was filed and none of the claim has completed that stage."  Defendants' Memorandum (document no. 9-1) at 2, n.1.  Consequently, say defendants, Kinetic's claims are premature and must be dismissed.[1]

Importantly, however, defendants' attacks on the veracity of the complaint's factual allegations rest entirely on evidence

---

[1]    Parenthetically, the court notes that IPS is <u>not</u> invoking the contracts' arbitration provisions.  Nor does IPS seek a transfer of this action to Pennsylvania, based upon the contracts' choice of venue provisions. Rather, IPS simply seeks dismissal of Kinetics' claims, urging that they are premature and saying the parties have yet to complete negotiations over the proper amounts owed to Kinetic.

and affidavits extrinsic to the complaint and the parties' contracts – matters more properly raised in the context of a motion for summary judgment, after both sides have had the opportunity to engage in meaningful discovery. A motion to dismiss is not the proper means by which to advance new factual claims, challenge the factual allegations of the complaint, or introduce extrinsic evidence of the sort upon which defendants rely. That the parties agreed to a specific means by which to resolve their disputes is plain. The extent to which they have complied with those provisions and acted in good faith is, at this juncture, unresolved.

Kinetics' quantum meruit/unjust enrichment claim against IPS fares less well. Indeed, Kinetic implicitly recognizes as much and does not object to its dismissal. See Objection to Motion to Dismiss (document no. 11). As the New Hampshire Supreme Court has noted, "unjust enrichment is an equitable remedy that is available only in the absence of an enforceable contract governing the matter." Barlo Signs Int'l, Inc. v. GCD Inc., No. 2017-0589, 2018 WL 3237974, at *2 (N.H. June 29, 2018). Because the additional work for which Kinetic seeks compensation from IPS is within the scope of the parties' contracts - that is, the additional work is covered by change orders contemplated by those contracts – Kinetic cannot pursue

8

equitable claims against IPS for those sums; its sole remedy lies in a breach of contract claim.  See generally Axenics, Inc. v. Turner Const. Co., 164 N.H. 659, 669-70 (2013).

II.  Claims Against the Project Owner, Lonza Biologics.

On the other hand, Kinetic's equitable claims against Lonza Biologics, the project owner, are sufficient to survive defendants' motion to dismiss.  To be sure, "the circumstances under which an unjust enrichment claim may be brought by a subcontractor against an owner, absent privity, are limited." Axenics, 164 N.H. at 672 (citation and internal punctuation omitted).  Nevertheless, there may be "special circumstances that would justify requiring the owner to pay, such as when the owner accepts benefits rendered under such circumstances as reasonably notify the owner that the one performing such services expected to be compensated therefor by the owner."  Id. (citations omitted).  Another such circumstances appears to arise when the project owner has not fulfilled its financial obligations to the general contractor.  Id.

Here, Kinetic has pled its quantum meruit/unjust enrichment claim against Lonza as an alternate theory of relief, "if Lonza has not paid in full for the labor, materials and benefits" supplied by Kinetic, "under such circumstances as to make it

9

inequitable and unjust for Lonza to retain the benefits without paying in full for their value." Complaint at para. 39 (emphasis supplied). See generally Fed. R. Civ. P. 8(d) (allowing alternate and even inconsistent claims). At this juncture, the complaint's allegations are sufficient to survive a motion to dismiss.

**Conclusion**

Count two of Kinetic's complaint (a claim for quantum meruit/unjust enrichment against IPS) fails to set forth the essential elements of a viable cause of action. It must, then, necessarily be dismissed.

The remaining allegations of complaint adequately and plausibly allege the essential elements of viable claims against the named defendants: breach of contract against IPS (count one) and, in the alternative, quantum meruit/unjust enrichment against Lonza (count three). A complaint need do no more than that to survive a motion to dismiss. That defendants believe they have evidence that may undermine Kinetic's claims or, at a minimum, establish that good-faith negotiations are ongoing and Kinetic's claims are premature, are matters more appropriately raised in the context of either summary judgment or trial.

10

For the foregoing reasons, as well as those set forth in Kinetic's legal memorandum (document no. 11), defendants' motion to dismiss (**document no. 9**) is granted in part and denied in part. Count two of Kinetic's complaint – that is, the equitable claims against IPS – is dismissed. In all other respects, defendants' motion to dismiss is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 4, 2021

cc:   John P. Sherman, Esq.
      Peter G. Callaghan, Esq.
      Christopher T. Hilson, Esq.
      Christopher D. Hawkins, Esq.