# United States Court of Appeals
## For the First Circuit

No. 11-1735

UNITED STATES OF AMERICA,

Appellee,

v.

BRAULIO AGOSTO-VEGA,

Defendant,

FRANCISCO REBOLLO-CASALDUC,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Martin G. Weinberg, with whom Kimberly Homan was on brief, for appellant.
Desirée Laborde-Sanfiorenzo, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and John A. Mathews II, Assistant United States Attorney, were on brief, for appellee.

September 27, 2013

**KAYATTA, Circuit Judge**.  Attorney Francisco Rebollo-Casalduc ("Rebollo"), a criminal defense attorney, appeals from a $2,000 sanction imposed upon him and his client for filing motions in limine immediately before his client's anticipated retrial.  We reverse.

## I. Background

Rebollo represented Braulio Agosto-Vega in a criminal case relating to the discharge of sewage into public waters. United States v. Agosto-Vega, 617 F.3d 541, 542-45 (1st Cir. 2010). On appeal after trial, we vacated the convictions of Agosto-Vega and his co-defendant because the district court had closed the courtroom during jury selection.  Id. at 547-48.  We found, however, that there was enough evidence to sustain the convictions, and so we remanded for retrial.  Id. at 550-52.

After remand, the district judge set a trial date and a cutoff date for plea negotiations.  After the trial was postponed at the government's request, Rebollo moved to dismiss Agosto-Vega's indictment on Speedy Trial Act grounds.[1]  The district court continued the trial while it considered that motion, but eventually

---

[1]  The Speedy Trial Act "generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance, but . . . contains a detailed scheme under which certain specified periods of delay are not counted." Zedner v. United States, 547 U.S. 489, 492 (2006).

denied the motion to dismiss, and then reset the trial for May 19, 2011.

Although the parties had evidently continued their plea negotiations, the government informed the district court on May 13, 2011, that no change of plea was forthcoming and trial should proceed. Rebollo then filed ten motions in limine, mostly to exclude or limit certain evidence used in the first trial: four motions on May 13th, two on May 17th, and four on May 18th. Collectively, the motions raised several classic evidentiary objections. Eight invoked Federal Rules of Evidence 402 and 403; three objected on hearsay or personal knowledge grounds; and two challenged testimony under Rule 702. The motions also pressed a challenge to evidence based on asserted limitations in the indictment, and made a request to strike a portion of the indictment. The government responded to one motion on the 18th. That same day, the court sua sponte vacated the trial date. The following day, it issued an order sanctioning Rebollo and Agosto-Vega jointly (but not severally) $2,000 for having filed the ten motions in limine over the course of the six days prior to the scheduled start of the trial. As justification for the sanction, the district court declared the filings both "late" and "an abuse of process." The court suggested that the motions were filed late to avoid impacting defendant's Speedy Trial Act motion, and/or to force a continuance of the trial.

Rebollo asked the court to reconsider the sanction entered jointly against him and his client. He argued that they had violated no announced deadline, that a sanction without warning or hearing deprived them of due process, and that there were good reasons not to file the motions earlier -- in particular, to preserve plea negotiations. The district court denied reconsideration, reasoning that because the motions targeted evidence from the first trial, they should have been filed within three months after the first appeal. The court was skeptical that plea negotiations justified the "late" filing of the motions in limine. It maintained that if the plea negotiations were so substantial, Rebollo should have discussed them in the Speedy Trial Act motion, because (in the court's view) time spent in plea negotiations is excluded under the Act. The court also concluded that any lack of due process in issuing the sanction without warning or hearing was cured by the court's consideration of the motion to reconsider. Rebollo appeals.[2]

---

[2] This appeal was stayed during Agosto-Vega's criminal case. That case having been resolved by plea, this matter is ripe for our review. See United States v. Kouri-Perez, 187 F.3d 1, 13 (1st Cir. 1999). This appeal is not moot; although the district court docket reflects a $2,000 "deposit" in June 2011, we have been informed without dispute that the funds were only deposited in escrow pending appeal, and so the fine has not yet been paid.

## II. Standard of Review

Because the district court relied on its inherent power to sanction the attorneys before it in imposing the sanctions, we review the order for an abuse of discretion. Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991); United States v. Romero-López (In re Armenteros-Chervoni), 661 F.3d 106, 108 (1st Cir. 2011). We do not review sanctions imposed on criminal defense counsel "in a vacuum," but rather bear in mind such counsel's important constitutional function. United States v. Cooper (In re Zalkind), 872 F.2d 1, 3 (1st Cir. 1989); see also United States v. Figueroa-Arenas (In re De Jesús Morales), 292 F.3d 276, 279, 282 (1st Cir. 2002) (noting that courts should use their inherent sanction power "with due circumspection" and should not "chill vigorous but legitimate advocacy").

## III. Analysis

The district court premised its sanction ruling on an assertion that the motions in limine were abusively late. We see nothing in the rules or the record that supports that conclusion or, more importantly, that placed Rebollo on notice of the court's deadline for filing the motions. Certain criminal motions, including challenges to an indictment, "must" be made before trial. Fed. R. Crim. P. 12(b)(3). However, a party "may" raise pretrial "any defense, objection, or request that the court can determine

without a trial of the general issue." Fed. R. Crim. P. 12(b)(2).[3]
Courts may and often do set scheduling orders in criminal cases
specifying deadlines for the filing of particular types of
motions.[4] Absent such an order, as in this case, the Federal Rules
of Criminal Procedure require only that motions be filed at least
seven days before any hearing date. See Fed. R. Crim. P. 12(b)(1);
Fed. R. Crim. P. 47(c). Assuming that Rebollo expected the motions
to be heard on the first day of trial, therefore, the motions were
arguably between one and six days late.[5] See Fed. R. Crim. P.
45(a) (computational rules). The court, however, did not base the
sanctions order on Rule 12 or Rule 47, or suggest that the motions
were late by a few days. Instead, it ruled in the sanction order
that the motions were "late," and then concluded in denying

_____

[3] Nearly all of Rebollo's objections fall into the category
of those that "may" be raised prior to trial, and so could also be
raised at trial. Although neither the district court nor the
government raised the point, at least the part of the third motion
that sought to strike part of the indictment arguably falls under
Rule 12(b)(3)(B), and so "must" have been raised pretrial. Even
so, Rule 12 provides the default sanction for such an error --
waiver of the objection. See Fed. R. Crim. P. 12(e).

[4] Although the district court's standing criminal scheduling
order set a general deadline for pretrial motions, that deadline
(thirty-five days after arraignment) is difficult to apply to this
case, which was on remand after appeal. Furthermore, that standing
order did not match the deadline that the district court announced
in denying the motion for reconsideration, and in any event, the
court did not rely on its standing order in issuing the sanctions.

[5] We need not decide in this case how this rule would apply
to motions raising objections to evidence to be offered in a
lengthy trial, absent a court-imposed motion deadline.

reconsideration that they were nearly four months late, having been due within three months of this Court's October 25, 2010 mandate after appeal.

We have reviewed the Local Rules for the United States District Court for the District of Puerto Rico and the docket in this case. We find nothing in any of those sources notifying Rebollo of the district court's deadline, or that sanctions might flow from filing the motions when he did. Cf. In re Richardson, 793 F.2d 37, 40 (1st Cir. 1986) (noting, in a civil case, that where no rule informed counsel that they must appear at a hearing, they could not be sanctioned for failing to appear unless they had been specifically told to do so). In so concluding, we do not question the district court's frustration upon receiving so many written motions so close to the commencement of trial. Certainly, if counsel hoped to get rulings on the motions before trial (and it is not evident that counsel here had such an expectation), he should have filed them much sooner. It is also undoubtedly true that counsel could have filed the motions sooner, as they largely involved challenges to evidence that was presented at the first trial. Counsel therefore could not have been either surprised or aggrieved had the court simply declined to rule on the motions.

Absent any contrary order (and with the possible exception noted in footnote three above), defense counsel properly

could have filed no written motions, waited until witnesses were called and questions posed, and then objected orally, arguing the objections at sidebar. By instead raising the objections before trial, counsel acted not merely to preserve the objections, but to seek the advantage of briefing the court, and perhaps securing an answer prior to trial in order to plan accordingly and keep opposing counsel from mentioning the challenged evidence before an objection is made.[6] See Black's Law Dictionary 1109 (9th ed. 2009) (defining a motion in limine as a "pretrial request that certain inadmissible evidence not be mentioned at trial.").[7] The court, in turn, may find such written motions helpful, or in some cases a burden. In either event, the trial judge certainly retains ample discretion in setting deadlines for counsel who wish to seek pretrial rulings, and in deciding whether to rule on such motions pretrial, or to rule tentatively and revisit the decision at trial, etc. Fed. R. Crim. P. 12 (b)(2), (c), (d), (e); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 58 (1st Cir. 2000) (district courts have "wide latitude" in managing

---

[6] Indeed, merely making a motion in limine, without renewal at trial, will not always preserve an objection. See Fed. R. Evid. 103(b); cf. United States v. Mahone, 453 F.3d 68, 70 (1st Cir. 2006)(objection was preserved because court's pre-trial ruling was "definitive").

[7] Motions in limine are alluded to in Fed. R. Evid. 103(b), and referenced in the commentary to that rule's 2000 amendments and in the 1991 commentary on Rule 404. As noted above, Fed. R. Crim. P. 12 provides a vehicle for filing such motions.

their cases). What a court cannot do in exercising that authority is what the court did here: set no clear deadline for the filing of such motions and then sanction counsel for defying the court's unstated expectations.[8] See Richardson, 793 F.2d at 40 (reversing sanctions imposed "for violating an unwritten rule . . . of which the court thought appellants should be aware"); Boettcher v. Hartford Ins. Grp. (In re Kiselica), 927 F.2d 23, 26 (1st Cir. 1991) ("We do not doubt the inherent power of a district court to act promptly and forcefully in the face of egregious or outrageous conduct . . ., but this conduct, violating no previously declared rule and not on its face outrageous, does not reach any such level.").

We note that in denying the motion to reconsider, the district court sharply criticized Rebollo's explanation that he delayed filing the motions because of ongoing plea negotiations. It is not clear whether the court objected that counsel failed to disclose the negotiations as excludable time in calculating Speedy Trial Act deadlines or whether the court questioned whether the negotiations had taken place when claimed. As to the former, there

---

[8] We also find the court to have read far too much into Rebollo's explanation as to when the motions were drafted. We read counsel's reference to "working on . . . the motions" after the government's May 13th notice as asserting that the motions were filed as they were worked on and finalized over the ensuing days -- not as a facially implausible claim that Rebollo had not first begun working on them at all until that date.

was no binding precedent establishing that time spent in plea negotiations is automatically excluded. See United States v. Valdivia, 680 F.3d 33, 42 (1st Cir. 2012) ("We have yet to address whether plea negotiations are automatically excludable . . . and there is no consensus among the circuits on the issue[.]"); United States v. Huete-Sandoval, 668 F.3d 1, 7 n.8 (1st Cir. 2011). As to the latter, we see no basis in the record for the judge's skepticism. (We also note with some dismay that the government -- which of course was privy to the plea negotiations, and which also failed to discuss them in briefing the motion to dismiss -- offered no clarifying information regarding the plea negotiations, either after the district court's ruling or even to this Court.)

We must comment, too, that the sua sponte issuance of a sanction order, staking out a view and judgment without any warning or opportunity to be heard, increases the likelihood of error and the appearance of unfairness. This Court has often noted "the general desirability and sometime necessity of affording notice and an opportunity to be heard when monetary sanctions are imposed." Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 246 (1st Cir. 2010) (quoting Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1238 (1st Cir. 1991)). Imposing sanctions without a hearing does not necessarily violate due process or constitute an abuse of discretion, particularly if the objectionable conduct took place in the court's presence. See id. However, when "a court is

considering invoking its inherent power to sanction, the much better practice is for the court to hear from the offending attorney before imposing any sanctions." <u>Romero-López</u>, 661 F.3d at 108-09.  The difficult position into which Rebollo and Agosto-Vega were placed in this case only underscores the importance of care and circumspection in the exercise of the court's inherent sanction power, as a matter both of substance and procedure.

## IV. Conclusion

For the foregoing reasons, we <u>reverse</u> the sanctions order.