# United States Court of Appeals
## For the First Circuit

No. 13-2251

JEFFREY F. RYAN,

Appellant,

CHEVONNE SIUPA,

Plaintiff,

v.

ASTRA TECH, INC.; JOE JOHNSON; STEVE CYR,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. Magistrate Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Arnold R. Rosenfeld, with whom Camille F. Sarrouf and Sarrouf Law, LLP were on brief, for appellant.
Andrea C. Kramer, with whom Hirsch Roberts Weinstein, LLP was on brief, for appellees.

November 14, 2014

**KAYATTA, Circuit Judge**. Attorney Jeffrey Ryan ("Ryan") appeals from the district court's revocation of his permission to practice pro hac vice for the plaintiff in the underlying lawsuit that gave rise to these proceedings.[1]  The district court revoked Ryan's pro hac vice admission after finding that he lied to the court about attempting to interfere with the deposition of his client.  Finding no error, we affirm.

## I. Background

The conduct that led to the revocation challenged on this appeal occurred during a deposition of Ryan's client by defense counsel on October 24, 2012.  The deposition transcript shows that a half hour into the deposition, defense counsel asked Ryan's client, the plaintiff, about an interrogatory answer.  After the plaintiff struggled for more than one minute to answer defense counsel's question, the following exchange between the attorneys took place:

> [Defense counsel]: I would like the record to reflect Mr. Ryan is writing notes to his client while she is answering a question.  If he wishes to prove that's not true rather than going on a rampage, he can turn back over the notepad that he just turned over, and he can show us all what he wrote on it.  But I will, again, be bringing up to the court that he was writing on a notepad.  And when I looked at him, he turned it over.

---

[1] The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).  The magistrate judge thus had authority to "conduct any or all proceedings" in the matter, id., so we refer to relevant rulings as those of "the district court," or simply "the court."

> It was clear that [the plaintiff's] eyes were looking at the notepad as well.
>
> Mr. Ryan: Nothing that [defense counsel] said in that last statement was accurate. 100 percent false.
>
> [Defense counsel]: Then I would request that you bring that notepad to the court and let the court look at it.

Defense counsel then asked the plaintiff while she was still under oath whether she had seen Ryan flip the notepad over. The plaintiff admitted that "[t]he notepad has been flipped over and reflipped over," and "I saw something in my peripheral vision." The plaintiff denied looking at the notepad. After further skirmishes, the deposition was suspended, with defense counsel announcing that she was calling the court.

After a forty-minute recess, Ryan and the plaintiff made statements on the deposition record. Ryan stated his position that defense counsel was wasting her allotted deposition time, and Ryan and the plaintiff both accused defense counsel of writing notes during prior depositions of the defendants. Ryan also announced that he was "prepared to show to the judge the notepad, which, as I accurately stated, only contains the information about the address of the courthouse which we're going to . . . later today."

A status conference with the district court had already been scheduled for 4:15 that afternoon to resolve unrelated deposition scheduling disputes. After the court addressed the scheduling issues, defense counsel described the notepad incident

and made an oral motion for monetary sanctions, including costs for the court reporter and to have future depositions video-recorded.

Ryan began his rebuttal by showing the court a notepad that Ryan said was the notepad he had at the deposition. The only writing on the notepad was the address of the courthouse. Ryan denied that defense counsel saw him writing a note because defense counsel's binders on the table would have obstructed her view of his notepad. He accused defense counsel of writing notes to her clients during prior depositions. Ryan did admit to flipping the notepad over but maintained that he had only written the address of the courthouse on the notepad before doing so. When the court asked Ryan why he did not simply show defense counsel the notepad, Ryan at first answered that defense counsel did not ask to see the notepad, and if she had, he would have shown her: "All she had to do was ask. I would have handed it to her, your Honor. She did not ask to see it." In fact, the deposition transcript shows that opposing counsel did invite Ryan to turn the notepad over. Pressed on why he did not volunteer to show the notepad and resolve the dispute, Ryan stated that he was "deeply offended" and accused defense counsel of whispering to deposition witnesses.

The district court then heard testimony from the deposition's court reporter. She testified that Ryan wrote something on the notepad and moved it toward his client, the plaintiff. He then flipped the notepad over when accused by

defense counsel. The court reporter could not read what Ryan had written, but she could see that there were two distinct pieces of writing on the notepad, one at the top and one further down the page. She recalled that, after the deposition was suspended, Ryan left the room with the notepad for less than a minute. When he returned, he held the notepad up, made some sort of offer that it was available for viewing, and placed it on the table. The court reporter was unsure whether defense counsel heard Ryan's announcement or looked at the notepad.

Most significantly, the court reporter testified that the writing on the notepad that Ryan placed on the table after reentering the room was not the same as the writing on the notepad that he had moved toward the plaintiff during the deposition. It was missing a few words or a sentence that had appeared under the writing at the top of the notepad. Likewise, the court reporter testified that the notepad that Ryan showed the court during the hearing was similarly missing the writing that was on the notepad that he had moved toward his client during the deposition.

The plaintiff also testified. She denied that she looked at the notepad on the table while a question was pending. She confirmed that Ryan flipped the notepad over after defense counsel went on the record about the notepad. She also opined that the court reporter could not have seen what was on the notepad because the reporter continued transcribing during the incident. The

plaintiff had "no idea" what Ryan had taken out of the room when he left the deposition room. She did testify that Ryan showed her the notepad before he left the room and the notepad contained the courthouse address.

At the end of the hearing, defense counsel made an oral motion to revoke Ryan's pro hac vice admission because the court reporter's testimony showed that he had offered false evidence to the court. The court denied the motion without prejudice but told defense counsel that she could renew it in writing, after which "[Ryan] has an opportunity to respond to it."

One week later the district court issued an order granting defendants' motion for discovery sanctions. The district court found the court reporter's testimony "wholly credible" and not undermined by the plaintiff's testimony.[2] Siupa v. Astra Tech, Inc., No. 10-10525-LTS, 2012 WL 5385681, at *6-7 (D. Mass. Oct. 31, 2012). The court made the following specific findings of fact:

> Mr. Ryan wrote something on his legal pad while the Plaintiff struggled to answer a question, pushed the pad toward his client, and then flipped it over to shield it from defense counsel's view. Immediately thereafter, Mr. Ryan failed to do what the Court would expect a lawyer to do in this circumstance: either show the legal pad to defense counsel when she stated her beliefs, or place the pad in a sealed envelope (if, for instance, it contained

---

[2] Although the court found the plaintiff credible, when she testified about the contents of the notepad "her demeanor reflected that her answer was tentative, and she already had admitted she was under stress at the time based on the manner in which her deposition was suspended." Siupa v. Astra Tech, Inc., No. 10-10525-LTS, 2012 WL 5385681, at *7 (D. Mass. Oct. 31, 2012).

-5-

privileged information), taking steps to memorialize either action on the record during the deposition . . . . Instead, Mr. Ryan, in a patently false statement, denied having taken the actions defense counsel (and the court reporter) had witnessed. When the deposition was temporarily suspended, he took the legal pad, left the room, somehow disposed of the relevant writing, and returned. He later made another false statement on the record, before the parties left defense counsel's conference room, regarding the content of the writing on the legal pad.

. . . [A]t the hearing before this Court, Mr. Ryan again falsely denied his actions and knowingly presented as evidence a legal pad that he had intentionally altered.

Id. at *7.

In short, the district court found as a matter of fact that Ryan attempted to communicate surreptitiously with his client while a question was pending at a deposition, that Ryan manufactured false evidence, and that Ryan lied to the court. The court put these findings in the context of Ryan's prior conduct during the case. This conduct included adding a jury demand to a filed amended complaint after obtaining opposing counsel's assent and the court's permission to file an amended complaint without a jury demand, disobeying a court order about discovery, attaching personal and irrelevant information as exhibits to a hearing request, and threatening to embarrass a defendant's wife. The court ordered Ryan to pay monetary sanctions consisting of fees and costs for litigating the motion for sanctions, the court reporter's time, and videotaping the plaintiff's and all subsequent depositions. The court also directed Ryan to show cause why it

should not revoke his pro hac vice admission for flagrant violations of the Massachusetts Rules of Professional Conduct. Id. at *1, *8; Mass. R. Prof'l Conduct 3.3(a)(1) & (4), 3.4(a) & (b), 4.1(a). The court gave Ryan two weeks to file a response and, at Ryan's later request, a one week extension.

Ryan's response to the show cause order totaled more than 100 pages, including a memorandum of law, his declaration, the plaintiff's declaration, the declaration of a paralegal who worked with Ryan, results from a polygraph exam Ryan took with questions about the notepad, excerpts from deposition transcripts that Ryan argued showed defense counsel coaching witnesses, and several other exhibits. Soon after filing his response, Ryan also filed a motion for reconsideration of the monetary sanctions the court had already imposed, arguing that "new evidence ha[d] been presented" in his response to the show cause order that undermined the court's factual findings. After the defendants' opposition filing, Ryan filed a sur-reply. Neither side requested that the court take any additional testimony, hold oral argument, or follow any particular procedures.

After conducting a de novo review of the entire record in the case, including testimony during the October 24 hearing and Ryan's filings in response to the show cause order, the district court again found that Ryan lied to the court and opposing counsel and submitted false evidence. The court observed that our circuit

has not set standards for the revocation of pro hac vice status once it has been granted. The court decided to apply the general due process requirements discussed in Johnson v. Trueblood, in which the Third Circuit concluded that "some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's pro hac vice status." 629 F.2d 302, 303 (3d Cir. 1980). The court concluded that the order to show cause sufficed as notice and that Ryan had adequate opportunity to be heard in his substantial written filings. On December 18, 2012, the district court issued an order revoking Ryan's pro hac vice admission and denying the motion for reconsideration of the monetary sanctions. Siupa v. Astra Tech, Inc., No. 10-10525-LTS, 2012 WL 6622492, at *8 (D. Mass. Dec. 18, 2012).

At a subsequent January 16, 2013, status conference, Ryan, now represented by his own attorney, voiced to the district court due process concerns about the revocation of his pro hac vice admission. In particular, Ryan asked the court either to grant another evidentiary hearing or to strike the sanctions because of the potential adverse consequences the revocation could have for Ryan's legal career. The court gave Ryan leave to make yet another filing in order to spell out a request for different punishment or an additional evidentiary hearing:

> To the extent you want me to reconsider, if you will, the consequence or the punishment I impose, or you wish me to reopen it for a hearing, then file a short motion explaining to me what the different issues are and why

-8-

you think I should do it, and if I reopened it or had a further hearing, what it would be about and who would testify and why it would be a useful expenditure of time.

In response, Ryan filed a memorandum of law that asserted that the court denied Ryan notice and an opportunity to be heard in violation of his due process rights and the sanctions were disproportionate to the alleged misconduct. His filing ended with a request for a hearing ("Ryan requests a hearing"), but it contained no detail about who the witnesses would be, what they would testify about, or why a hearing "would be a useful expenditure of time."[3] Ryan also objected that he did not have prior notice that the finding that he wrongfully inserted the jury demand into the amended complaint was a potential ground for revocation of his pro hac vice admission. Ryan did not attempt to controvert the finding itself.

On February 5, 2013, the district court denied Ryan's requests for reconsideration and a hearing. Siupa v. Astra Tech,

---

[3] The closest Ryan came to proposing testimony to be offered at a hearing was in his argument that the October 24, 2012, hearing was deficient: "[Ryan] should have been accorded at least notice of the purpose of the October 24, 2012 hearing and a separate opportunity to be heard, to confront his accuser, and even possibly to testify." Given notice and a chance to prepare, Ryan asserted that he could have prepared direct and cross examinations of the court reporter and the plaintiff, obtained photographs and a reconstruction of the deposition table to "analyze[] the lines of sight of the witnesses, a key factor in their testimony," obtained separate counsel, and called defense counsel as a witness. In fact, the record is undisputed that Ryan knew at least four hours beforehand exactly what the subject of the October 24 hearing would be--his behavior at the deposition--and he did not seek any greater opportunity to prepare for that hearing.

<u>Inc.</u>, No. 10-10525-LTS, 2013 WL 450149, at *3 (D. Mass. Feb. 5, 2013).  The court concluded that no due process violation occurred and Ryan failed to justify another evidentiary hearing.  As for the amended complaint, the court noted that Ryan must have known that the complaint was at issue because he addressed it in his initial response to the show cause order.  Ryan now appeals the revocation of his pro hac vice admission and the imposition of monetary sanctions,[4] neither of which was mooted by the eventual settlement of his client's claim.  <u>See</u> <u>Obert</u> v. <u>Republic W. Ins. Co.</u>, 398 F.3d 138, 143 (1st Cir. 2005) (potential damage to attorneys'

---

[4]  Ryan filed a joint notice of appeal with the plaintiff after the defendants prevailed in the underlying employment discrimination case.  The joint notice of appeal announced Ryan's intention to "appeal[] the revocation of his pro hac vice admission to the United States District Court, District of Massachusetts, by Chief Magistrate Judge Leo T. Sorokin, on October 31, 2012, reconsideration denied, on December 18, 2012, in the above entitled case."  Although it would have been preferable for Ryan to file a separate notice of appeal challenging the sanctions order, we nonetheless have jurisdiction over Ryan's appeal from the revocation of his pro hac vice admission.  <u>See</u> <u>In re Plaza-Martínez</u>, 747 F.3d 10, 13 (1st Cir. 2014).
Ryan's intent to appeal the monetary sanctions order is not so clear.  He seeks in a supplemental letter brief to clarify that he also appeals the order imposing monetary sanctions.  We have an "oft-stated policy of affording liberal construction" to the notice requirement in Federal Rule of Appellate Procedure 3.  <u>Id.</u>  Both orders referenced in the joint notice of appeal concerned the monetary sanctions as well as Ryan's pro hac vice admission.  These references, along with our policy of liberal construction, are enough for us to assert jurisdiction over Ryan's appeal of the monetary sanctions. <u>See</u> Fed. R. App. Proc. 3(c)(1)(B) ("The notice of appeal must . . . designate the judgment, order, or part thereof being appealed.").

-10-

reputations from findings of ethical violations was sufficient to avoid mootness).

## II. Standard of Review

Although the district court did not explain the basis of its authority to revoke Ryan's pro hac vice admission, it relied on the district court's inherent power to sanction. See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (federal courts have inherent power "to discipline attorneys who appear before it"). We review the imposition of a sanction pursuant to the court's inherent power for an abuse of discretion. United States v. Agosto-Vega, 731 F.3d 62, 64 (1st Cir. 2013); see also In re Cordova-González, 996 F.2d 1334, 1335 (1st Cir. 1993)(per curiam)(reviewing disbarment for abuse of discretion). Importantly, we accept all findings of fact unless clearly erroneous. F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R., 563 F.3d 1, 6 (1st Cir. 2009).

## III. Analysis

We begin with the obvious. Trial courts have ample authority pursuant to Fed. R. Civ. P. 30(d)(2) to impose sanctions "on a person who impedes, delays, or frustrates the fair examination of the deponent." The rule itself spells out no specific procedure, but the procedure the district court followed at the request of both counsel is standard: counsel suspended the deposition to bring the issue to the court, and the court heard arguments from both counsel, took testimony and evidence as

reasonably proffered, and later issued a decision imposing monetary sanctions. Under Rule 30(d)(2), this procedure was unassailable, and Ryan offers no precedent suggesting otherwise. Ryan does correctly argue that monetary sanctions of this type are more fair when accompanied by notice and an opportunity to be heard. See Agosto-Vega, 731 F.3d at 66 ("[T]he sua sponte issuance of a sanction order, staking out a view and judgment without any warning or opportunity to be heard, increases the likelihood of error and the appearance of unfairness."). Here, though, the sanctions were issued at the request of a party, and Ryan was heard before any decision was made. The issue, too, was quite simple, and turned entirely on the testimony of four people, all of whom were present at the hearing.

Unable to assail the procedures followed by the district court in resolving the discovery dispute with an award of sanctions, Ryan raises three challenges to the court's revocation of his pro hac vice admission. First, he argues that the district court failed to follow the procedure for attorney discipline in District of Massachusetts Local Rule 83.6. Second, he argues that the procedure the court did follow violated his due process rights. Finally, Ryan challenges the court's decision on the merits by arguing that there was insufficient evidence to support the fact findings upon which both the revocation of his pro hac vice

admission and the preceding discovery sanctions were predicated.

We address each challenge in turn.[5]

## A. Applicability of the Local Rules governing attorney discipline

Ryan argues that the district court failed to follow two

provisions of the district court's local rule governing

disciplinary proceedings. See D. Mass. Local R. 83.6(4), (5).  The

first provision provides that "[f]or misconduct defined in these

rules, and for good cause shown, and after notice and opportunity

to be heard, any attorney admitted to practice before this court

may be disbarred, suspended from practice before this court,

reprimanded or subjected to such other disciplinary action as the

circumstances may warrant."  D. Mass. Local R. 83.6(4)(A).

Misconduct includes "[a]cts or omissions . . . that violate the

ethical requirements and rules concerning the practice of law of

the Commonwealth of Massachusetts."  D. Mass. Local R. 83.6(4)(B).

The court fully complied with Local Rule 83.6(4) before revoking

Ryan's admission to practice before the court.  Ryan received

notice in the order to show cause informing Ryan that the court was

---

[5]  Ryan does not actually challenge in his brief the award of monetary sanctions per se.  The only argument Ryan devotes to the issue is a short statement in his reply brief that the notice of appeal also included the monetary sanctions.  See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("It should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument.").  Even if Ryan had not waived this claim, however, we would find the monetary sanctions proper for the same reasons we find the revocation of his pro hac vice admission proper.

-13-

considering revoking his pro hac vice admission based on two and a half pages of factual findings describing Ryan's "serious misconduct."

Ryan also had sufficient opportunity to be heard. The district court gave Ryan all the time he requested in order to file a response to the order to show cause. Ryan took advantage of this opportunity to file declarations, exhibits, and argument. The court also entertained a motion for reconsideration challenging the monetary sanctions and a "sur-reply" to Astra Tech's filing in support of the revocation and monetary sanctions. The court even allowed Ryan, through counsel, to file an additional memorandum continuing to re-argue the issues even after entry of the order revoking Ryan's pro hac vice status. These filings provided Ryan ample opportunity to contest the proposed revocation.

The second local rule Ryan relies on sets out a more detailed referral and hearing procedure for court-initiated attorney disciplinary proceedings. D. Mass. Local R. 83.6(5). The rule states in relevant part that

> When misconduct or allegations of misconduct that, if substantiated, would warrant discipline as to an attorney admitted to practice before this court, is brought to the attention of a judicial officer, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these rules, the judicial officer may refer the matter to counsel for investigation, the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate.

D. Mass. Local R. 83.6(5)(A).  If the independent counsel decides that formal disciplinary proceedings are appropriate, the court may issue an order for the respondent-attorney to show cause why the attorney should not be disciplined.  D. Mass. Local R. 83.6(5)(C). If the respondent-attorney raises "any issue of fact" or "wishes to be heard in mitigation," then the chief judge "shall set the matter for prompt hearing before three (3) judges of this court." D. Mass. Local R. 83.6(5)(D).  The complaining judge may not sit on this panel.  Id.

Local Rule 83.6(5) does not unambiguously indicate whether it is a mandatory or discretionary procedure for disciplining an attorney.  The rule's language that the district court "may" refer the matter to independent counsel suggests that the rule's disciplinary procedure is merely an option available to the district court and not a prescribed course of action. Certainly the district court possesses inherent authority to levy sanctions and control who may appear before it.  See Chambers, 501 U.S. at 42-46; Agosto-Vega, 731 F.3d at 64.  It seems unlikely that the Massachusetts district court intended to restrict the exercise of its broad and important inherent authority so significantly and cumbersomely without doing so expressly and unambiguously.[6]  In

_____

[6] Other district courts in the First Circuit have chosen to make referral to independent or bar counsel expressly mandatory. See, e.g., D. Me. Local R. 83.3(e)(1) ("[T]he Judge shall refer the matter to counsel for investigation and the prosecution of a formal proceeding or the formulation of such other recommendation as may

-15-

fact, the Local Rules expressly preserve the district court's inherent power to sanction attorneys appearing before it. See D. Mass. Local R. 83.6(11)(A) ("Nothing contained in these rules shall be construed to deny to the court such powers as are necessary for the court to maintain control over proceedings conducted before it . . . ."). In at least one instance, the district court itself has expressed doubt about whether referral to bar counsel is always "effective and efficient" and treated the procedure as discretionary. United States v. Jones, 620 F. Supp. 2d 163, 177 (D. Mass. 2009) (stating intention to instead rely on criminal contempt authority pursuant to 18 U.S.C. § 401 and Fed. R. Crim. P. 42(a) to sanction prosecutors who withhold exculpatory evidence); see also United States v. Roberts, 978 F.2d 17, 20 (1st Cir. 1992) ("A district court possesses great leeway in the application and enforcement of its local rules."). Further, an interpretation that the extensive procedure in Local Rule 83.6(5) is mandatory would make superfluous the more general "notice and opportunity to be heard" requirement in Local Rule 83.6(4) for disciplining an attorney for misconduct.

On the other hand, it also seems unlikely that the district court would create such a detailed and resource-intensive procedure if individual district court judges could decline to follow it. And, once the judicial officer triggers the Local Rule

be appropriate.").

-16-

83.6(5) procedure by referring the matter to independent counsel, the rest of the steps in the process appear to be mandatory.

In the end, we need not decide this question because Ryan never asked the district court to follow the Local Rule 83.6(5) procedure.  Ryan did not so much as mention the relevant local rule in any of his district court filings or appearances, his voluminous response to the order to show cause, or his sur-reply.  Even after he retained counsel, counsel too made no belated request or argument that the rule's procedure be invoked.  Ryan had ample opportunity to argue below that Local Rule 83.6(5) dictated a specific procedure, but he failed to do so.

We therefore review the district court's alleged failure to follow Local Rule 83.6(5) for plain error.  See Tasker v. DHL Retirement Sav. Plan, 621 F.3d 34, 40-41 (1st Cir. 2010).  To overcome plain error review, Ryan must show "(1) an error occurred (2) which was clear or obvious and which not only (3) affected [Ryan's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings."  Id. (internal quotations omitted).  Given the lack of clarity that we have already discussed concerning whether the rule's procedure must always be invoked in such cases, we cannot find the failure to follow the procedure in the local rule clear or obvious error.  Nor has Ryan given us reason to believe that the outcome of his case would have been any different if the district

court had followed the local rule procedure. Ryan has therefore failed to establish plain error.

## B. Alleged due process violations

That brings us to Ryan's more general challenge that the district court violated his right to procedural due process under the Fifth Amendment. In particular, Ryan claims that he was entitled to prior notice, an opportunity to be heard, and an evidentiary hearing. We have not yet decided whether an attorney's pro hac vice admission is a property interest protected by due process, and, if so, what procedural safeguards due process requires before the district court may revoke that admission. We need not answer these questions today, however, because the district court afforded Ryan each of the procedural protections to which he claims he was entitled.[7]

---

[7]     Other circuits have concluded that attorneys admitted pro hac vice are entitled to notice and an opportunity to be heard before the court revokes their admission. See Belue v. Leventhal, 640 F.3d 567, 577 (4th Cir. 2011) ("[O]nce [pro hac vice] status is granted, attorneys must receive some modicum of due process before it is revoked.") (collecting cases); Lasar v. Ford Motor Co., 399 F.3d 1101, 1112 (9th Cir. 2005) ("[W]e have held that a district court need only provide notice and an opportunity to be heard before revoking an attorney's pro hac vice status."); Johnson, 629 F.2d at 303 ("[W]e believe that some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's pro hac vice status."). These courts have declined to require additional procedural safeguards. See Belue, 640 F.3d at 577 ("While courts are generally in agreement that pro hac vice attorneys must receive notice of the specific grounds for revocation and a meaningful opportunity to respond, none have been willing to extend due process protections beyond those baselines."). We have reached the same conclusion for attorneys facing disbarment. In re Cordova-González, 996 F.2d 1334, 1336

To the extent due process required prior notice and an opportunity to be heard, those requirements mirror those in Local Rule 83.6(4) and were satisfied by the October 31 order to show cause and the opportunities to file several written responses in the district court. This is not a case in which the district court disciplined an attorney without warning or a chance to explain alleged misconduct. Cf. Plaza-Martínez, 747 F.3d at 14 (reversing sanctions when "[t]he district court acted here without giving the appellant any notice that it was considering sanctions or any opportunity to tell her side of the story"); Lasar, 399 F.3d at 1113 (due process violation when district court imposed lifetime ban on attorney's pro hac vice appearance and show cause order did not clearly raise ban as a possibility). Nor is this a case in which the court sanctioned conduct that was not obviously sanctionable. Cf. Agosto-Vega, 731 F.3d at 65 (district court cannot "sanction counsel for defying the court's unstated expectations").

Ryan's assertion that the court was somehow required to notify him that it was considering revocation before the October 24, 2012, evidentiary hearing confuses the imposition of monetary

(1st Cir. 1993) (per curiam) ("[T]he due process rights of an attorney in a disciplinary proceeding do not extend so far as to guarantee the full panoply of rights afforded to an accused in a criminal case. Rather, an attorney facing discipline is entitled to procedural due process, including notice and an opportunity to be heard." (internal quotations and citations omitted)).

sanctions under Fed. R. Civ. P. 30(d)(2) and the revocation of his pro hac vice admission for misconduct under Local Rule 83.6(4). The evidentiary hearing on October 24, 2012, was about monetary sanctions for deposition misconduct under Fed. R. Civ. P. 30(d)(2) brought to the court's attention on oral motion by defense counsel. At that hearing, and without objection by Ryan, the court did exactly what any court would do in such a situation: it heard out all counsel, accepted the evidence offered by each counsel, and then decided what happened at the deposition. There was nothing wrong with this procedure.

Nor was it improper for the court to consider its factual findings adopted in resolving the discovery dispute when subsequently deciding to revoke Ryan's admission. Courts regularly rely on fact findings from an earlier proceeding when the principles of issue preclusion apply. See, e.g., Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 7-8 (1st Cir. 2008); González-Piña v. Rodríguez, 407 F.3d 425, 430 (1st Cir. 2005). And Ryan makes no argument that those principles do not support such reliance here. Moreover, the record here shows that the court allowed Ryan to file any additional evidence that he wished to file, considered that evidence, and reconsidered its prior findings de novo. Ryan, in turn, requested no further hearing before the court ruled. Nor can we fault the district court for rejecting the later belated and perfunctory request for a further hearing. When

-20-

Ryan's counsel orally requested an evidentiary hearing at a motion hearing one month after the revocation order, the court invited Ryan to submit his request in writing and describe the evidence he expected to produce during the hearing. Ryan failed to follow the court's instructions and instead submitted an eleven-page memorandum of law with no responsive description. We find no error in the denial of Ryan's perfunctory request.

To the extent Ryan also argues that due process required the judge to recuse himself or refer the pro hac vice matter to another judge, Ryan is incorrect. This is not a case in which the cause for the disciplinary action taken by the judge is a personal attack on that judge in circumstances in which reasonable observers might regard the judge as having lost the ability to remain detached. See Mayberry v. Pennsylvania, 400 U.S. 455, 465-66 (1971). Rather, this is a case in which the judge, in finding facts necessary to resolve a discovery dispute, determined that those same facts likely warranted further ramifications, gave Ryan several attempts to show otherwise, and then deliberatively addressed and resolved the matter in a manner that was hardly surprising or disproportionate. See Liteky v. United States, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-

-21-

seated favoritism or antagonism that would make fair judgment impossible."). Nor, finally, could Ryan shop for judges simply by suggesting in his briefing on the pro hac vice matter that the judge was biased. See Isaacson v. Manty, 721 F.3d 533, 536, 539-40 (8th Cir. 2013) (holding no obvious error occurred when judge did not sua sponte recuse herself from contempt proceeding against party who accused the judge "of bigotry, prejudice, and conspiracy").

In sustaining the process afforded Ryan here, we are not saying that process does not matter. It does, and courts should take care before levying a sanction as serious as pro hac vice revocation. See Agosto-Vega, 731 F.3d at 66 (reversing a sanction order and noting "the importance of care and circumspection in the exercise of the court's inherent sanction power"). We are saying, instead, that the process was robust with many opportunities for Ryan to present evidence and dispute the facts and the punishment. That he did not timely ask for additional process below underscores the adequacy of the district court's procedure.

## C. Sufficiency of the evidence to support the sanctions

We turn finally to Ryan's challenge on the merits of the district court's rulings. He argues that there was insufficient evidence of his misconduct and that the sanctions were disproportionate to any wrongdoing. Ryan directs us to authority from other circuits for the proposition that the standard of proof

-22-

in attorney disciplinary proceedings ought to be clear and convincing evidence. <u>See,</u> <u>e.g.</u>, <u>Sealed Appellant 1</u> v. <u>Sealed Appellee 1</u>, 211 F.3d 252, 254 (5th Cir. 2000) ("[A]ttorney discipline proceedings require proof only by clear and convincing evidence."). <u>But see</u> <u>In re Barach</u>, 540 F.3d 82, 85 (1st Cir. 2008) ("[T]he use of a preponderance of the evidence standard in bar disciplinary proceedings does not offend due process."). He cites no controlling First Circuit authority, nor can we find any. We need not decide today whether the district court should have used an elevated standard of proof because there was clear and convincing evidence to support the court's findings of Ryan's misconduct.

The most serious instances of Ryan's misconduct are compellingly supported by the court reporter's testimony that a notepad Ryan slid toward the witness had a note in addition to the courthouse address. If the court reporter was correct, then Ryan lied to the court and submitted falsified evidence during the evidentiary hearing when he denied writing a note and offered a notepad without the writing that the court reporter had seen. The court found the court reporter "wholly credible." Ryan now responds by characterizing the court reporter's testimony as "addled" and "rife with interruptions, confusion, and contradictions," but the court disagreed and "[d]istrict court determinations of credibility are of course entitled to great

-23-

deference." Jennings v. Jones, 587 F.3d 430, 444 (1st Cir. 2009). The court reporter may have been nervous after finding herself in the unusual position of testifying, but we see no basis in the transcript of her testimony to conclude that her testimony was unreliable. The court reporter testified consistently that Ryan wrote something on his notepad and pushed it toward his client while a question was pending, flipped the notepad over when defense counsel accused him on the record, left the deposition room with the notepad for less than a minute after the deposition was suspended, reentered the room, and announced that the notepad was available for examination. Most important, she testified consistently that the top sheet of the notepad contained two distinct pieces of writing before Ryan left the room but only one piece of writing when he reentered, and that the altered notepad was the one Ryan showed the court.

Ryan makes much of the court reporter's admission that she could not read the note Ryan wrote on the notepad or tell whether Ryan's client could read his note, but in doing so he entirely misses the point. The court revoked Ryan's pro hac vice status primarily because he lied and presented false evidence. And in assessing Ryan's conduct in this context, it matters little whether his client actually read the note. See In re BellSouth Corp., 334 F.3d 941, 951 (11th Cir. 2003) ("A court's inherent power to disqualify an attorney . . . is rooted in concern for the

integrity of the judiciary and the public's perception thereof. It does not further those ends to punish only successful attempts at tampering with the judicial process . . . ."). Moreover, given the supported finding that he lied, it follows that he destroyed the only evidence of what he actually wrote on the notepad. Hornbook spoliation principles dictate an adverse inference that he did attempt to coach his witness. See Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1158-59 (1st Cir. 1996) ("When a document relevant to an issue in a case is destroyed, the trier of fact sometimes may infer that the party who obliterated it did so out of a realization that the contents were unfavorable.").

Ryan's account of the events and his actions during the deposition do not inspire confidence in his truthfulness. If all he had written was the court address, why not flip over the notepad and show defense counsel? Ryan's answer to this question (he would have done so if asked) only dug a deeper hole because the transcript shows he was invited to do so, and he refused.

We think it important, too, that Ryan's statements to the court were not spontaneous. This was not a fleeting moment of weakness under pressure without premeditation, later recanted. Ryan had four hours between the time the deposition was suspended and the status conference during which to decide what to say to the court about what he wrote on the notepad. That he used that time

in part to create a false document to present to the court certainly works against him.

Ryan also complains that, in ordering the monetary sanctions and issuing the order to show cause, the district court cited prior conduct by Ryan in this lawsuit that reflected unfavorably on Ryan. Specifically, Ryan had unilaterally added a jury demand to an agreed and approved copy of an amended complaint without notice to counsel or the court, he had threatened to use publicity (and incorrect information) to publicly embarrass a third party if the case did not settle, and he had included gratuitous name-calling in a prior submission. Siupa v. Astra Tech, Inc., No. 10-10525-LTS, 2012 WL 5385681, at *1-3 (D. Mass. Oct. 31, 2012). Ryan makes no argument that this conduct did not occur. Rather, he argues that it was "no harm, no foul," that his client was entitled to the jury trial he unilaterally sought to secure, that he was "careless," and that the conduct in question was irrelevant to the sanctions motion. We disagree. In exercising its discretion to issue or not issue a sanction for misbehavior by counsel, the court may certainly consider the extent to which counsel's misconduct is aberrational. That Ryan had already staked out a position at the corner-cutting end of the spectrum weighed in the discretionary selection of an appropriate sanction. Nor should any lawyer confuse the combative aggressiveness manifest in much of Ryan's behavior with the professional resolve of an effective advocate.

See American College of Trial Lawyers, <u>Code of Pretrial and Trial Conduct</u> 3-8 (2009).

## IV. Conclusion

Reduced to its nub, this is a simple, but important case. With notice, an opportunity to be heard, and ample, very convincing evidentiary support, the district court found that Ryan falsified evidence and lied point blank with premeditation to the court. Rejecting no procedure timely requested by Ryan or required by due process, and after further notice and opportunity to be heard, the court decided to withdraw its permission that Ryan could appear as counsel in this case. Anyone who thinks it important that lawyers not lie to judges would be surprised if the court had done otherwise. We therefore <u>affirm</u> the orders revoking Ryan's pro hac vice admission and imposing monetary sanctions.